# Reese et al. *versus* Biddle.

1. Where an operator of a coal mine has used reasonable care in the selection of a mine boss, he is not responsible to a miner for an injury to him, resulting from the negligence of the mine boss.

2. A mine boss is a fellow-servant of the miner.

3. Lehigh Valley Coal Co. *v.* Jones, 5 Norris, 432; Delaware & Hudson Canal Co. *v.* Carroll, 8 Id., 374; Keystone Bridge Co. *v.* Newbury, 15 Id., 246, followed.

February 11th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Somerset county* : Of July Term, 1885, No. 134.

This was an action on the case brought March 12th, 1884, by Henry Biddle against Thomas Reese, J. B. Whipkey and John F. Elan, partners, under the firm name of Fairview Coal Co., to recover damages for injuries sustained by the plaintiff through the alleged negligence of the defendants in operating a coal mine without sufficient supervision.

Plea : Not guilty.

On the trial before BAER, P. J., the following facts appeared :

Thomas Reese, J. B. Whipkey and John F. Elan, as partners, were engaged in mining and shipping coal from the Fairview mines, in Elklick township, Somerset county, Pennsylvania. The mouth of the mine is on the side of the hill, the coal was hauled out in cars. Defendants employed miners and others in their business. Thomas Reese was the superintendent and mining boss, and he inspected the mines every day. On the 8th of May, 1881, Henry Biddle, who professed to be a practical miner, was employed by the defendants, and went to

work in the mine on the same day. He continued, as a miner, in the employ of the company until the 28th of March, 1883, a period of one year and ten months. On the 28th of March, 1883, Henry Biddle, the plaintiff, and George Buskey were working in the same room. While they were thus engaged, a mass of material, known to miners as a "horse-back," or "kettle," in the roof of the room in which the plaintiff was working, fell upon him and broke his leg, and otherwise injured him.

The mine at the mouth was well supplied with props, and each miner was required to select the props he needed; and when selected they were taken into the mine and delivered in the miner's room by the driver of the car which conveyed the coal from the mine.

The plaintiff presented *inter alia* the following points:

3. "That it was the duty of the defendants to employ a competent and practical inside overseer or mining boss, whose duty it was to furnish timber of suitable lengths and sizes at the place where they were to be used in the working place of the plaintiff; and if the jury believe that the defendants did not furnish such timbers and the plaintiff was injured in consequence thereof, without any contributory negligence on the part of the plaintiff, then the plaintiff is entitled to recover."

Which point the court answered as follows:

Answer: "This we affirm." (Third assignment of error.)

4. "That it was the duty of the mining boss to cause timbers of suitable lengths and sizes to be placed in the mine to protect the miners from danger from all loose coal, slate and rock overhead; and if the jury believe that the defendants, through their mining boss, failed to discharge this duty, and the plaintiff was injured in consequence thereof, and without contributory negligence on his part, then the plaintiff is entitled to recover."

Which point the court answered as follows:

Answer: "We cannot affirm this in the manner in which it is written, because it differs from the first point. But we answer it in this way: It was the duty of the mining boss to see that props of the proper sizes were placed in the working places of the miners; but it was not his business to place in position or erect the props in the working rooms. That is the business of the miner. As to the props of the working rooms, it was his duty to see that a supply was in the room to be used by the miner; and if the mining boss failed to discharge his duty, and the plaintiff was injured in consequence thereof, and without any fault of his own, without any contributory negligence on his part, then he can recover." (Fourth assignment of error.)

[Reese *v.* Biddle.]

The defendant presented *inter alia* the following points:

2. "That the plaintiff having entirely failed to show any negligence on the part of the company, or its superintendent, which in any wise contributed to the accident, the verdict must be for the defendants."

Which point the court answered as follows:

Answer: "We refuse to affirm this point for the reason that it asks the court to say to the jury that the plaintiff has failed to show any negligence on the part of the company or its superintendent which in any wise contributed to the accident. That is a question for the jury. On the side of the plaintiff, the witnesses allege that the props were not in the room, and that the injury resulted from their absence; on the other side, it is alleged that it resulted from a suspended rock, that the danger of its falling was perceptible to anybody that would look at it, and that the plaintiff's attention was called to it. That raises a question of fact, and, therefore, we leave it to you to determine. If the jury should find that there was no negligence on the part of the company, then the verdict must be for the defendants." (Fifth assignment of error.)

3. "That under the law and the evidence in the case, the verdict must be for the defendants."

Which point the court answered as follows:

Answer: "This we refuse. To affirm this point would be to take the case from you; the court would be deciding it. In refusing to affirm this point we do not mean to say that the verdict must be for the plaintiff; we mean that you must decide it from the evidence before you, and the charge of the court." (Sixth assignment of error.)

The court instructed the jury as follows, *inter alia*, in the general charge:

The case in which you have been sworn is one of considerable importance, and one that requires that you should determine it, as indeed jurors should all cases, strictly in accordance with the evidence that is offered in the case and the charge of the court, without any regard to any opinion or information which any one of you may have about the manner of doing business in the particular transaction involved. Jurors have to determine cases wholly on the evidence that is sworn to before them, and from the charge of the court. The court is responsible for the law of the case, and you must take the law of the case from the court.

[This case is one in which we have an owner of a coal mine, or a superintendent, on one side, and a miner, a hard working man, on the other; nevertheless, your duty is to determine the case without regard to what the conditions of the parties are.] (First assignment of error.)

The plaintiff, while mining coal for the defendants at Fairview Mines, was injured by a fall of loose slate and coal from overhead, which in some way became disconnected from the body of the roof, and in regard to which you have heard the testimony, if the evidence is believed, that is what fell; nevertheless, you are the judges of the facts. It is not disputed that his leg was broken, that he was injured and suffered great pain for some weeks, that he was under the surgeon's treatment for several months, that he was unable to work for a still longer time, and that, to the present, he has not been able to earn as much as he could have earned had he not been injured; and there is, also, some proof that he will likely be affected by this injury during the balance of his life. If the plaintiff, as a miner, undertook to mine coal for the defendants, when he engaged in this employment and entered their mine at Fairview, he assumed the risks that were incident to his employment as a miner. Of course there is more risk in going into a coal-bank to work than there is in the occupation of an agricultural laborer, or in many other employments. The miner goes into the mine with that understanding; he engages in the work subject to such risks as are incident to his employment.

The defendants, who are the employers, were under an implied contract to exercise reasonable care, and to adopt suitable instruments and means for mining with safety. That is part of the duty of the defendants. The miner takes a certain amount of risk, and the employer must see that due care is exercised on his part. Where the danger is apparent and seen by the miner himself, or is pointed out to him by a coemployee, or some one else in the mine at the same time, who cautions him of the danger, and he, notwithstanding, proceeds with his work and in consequence is hurt, whereas by suspending work he would not have been injured, and you find that, if notified or cautioned, he could with safety have desisted from the work, then his own negligence contributed to the injury, and he cannot recover. The evidence, if believed, shows that the injury resulted from a fall of loose coal and slate from overhead, which existed there as a sort of "horseback." The plaintiff alleges that the cause of the fall was negligence in the widening of the room and the narrowing of the pillars, and that this was done by order of the mining boss.

If that was so, and the injury did result from that cause, it would probably present a different case; but, if the evidence be believed, the pillars stand intact to-day, as they did at the time they were cut, before the injury, at the time of the injury, and since. There has been no fall of the roof of the mine, except this loose mass, and that cannot be called the roof.

You will readily understand the difference between the coming down of the entire superincumbent mass and the fall of a small kettle-shaped fragment out of the roof.

The witnesses for the defendants, expert miners, say the fall was independent of the size of the room or the pillars, and that there was a seam or slip apparent, disconnecting this "horse-back" from the roof, and that it would have fallen if the room had been much narrower. This evidence is important on the question as to whether the widening of that room caused that overhanging mass to fall. The room has been driven a great distance since, and the roof is intact; and it is in evidence that such slips of "horse-back" occur frequently in mining, and that, upon the whole, this was a safe mine. The defendants deny that they ordered the widening of the room or the cutting down of the pillars. If you should conclude that the widening of the room had nothing to do with the fall, and that is a question for you from the evidence, then the plaintiff further says that it resulted from the defendants' negligence in not supplying him with proper props or supports where they should have been delivered. I mean that if the question of the widening of the room is out of the way, and no injury resulted from that alone, then the other question arises, whether it resulted from a lack of props. It is in evidence by most of the witnesses that the injury could have been averted in two ways—first, by a prop; second, by pulling down the loose material before starting in to mine; but it was not pulled down, and no prop was erected.

The plaintiff, however, alleges that he needed props, and none were in the room in which he was working; that they were in abundance outside; that he went out and selected props, and directed a co-employee, the driver who hauled out the coal and brought in the props, to bring them in; that the driver neglected to bring them, but said that he would bring them on his next trip; and that, while engaged in the mine and before the arrival of the props, this loose material fell upon the plaintiff and injured him. The plaintiff claims to recover because of the negligence of the mining boss, Mr. Reese, who is also one of the owners of the mine, to keep props supplied in the working rooms.

The defendants call two witnesses, Edward Engle and Phineas Christner, who were co-employees in the same mine, and were in the room where the accident happened not long before its occurrence, and they testify that they saw that there was a loose mass overhead which was dangerous, and that they called the plaintiff's attention to it and said, "Boys, I wouldn't work under that without putting in a prop;" that plaintiff replied, "Oh, I worked in more dangerous places in Virginia

[Reese v. Biddle.]

than that; and anyhow, there are no props;" and that he continued on in his mining till the mass fell, and he was hurt.

The defendants allege that, though there were no props in the room ready for use, yet there was an abundance outside, and that the plaintiff, after seeing, or being notified or cautioned of the danger that was apparent, or seemed imminent, could not recklessly continue at his work without being guilty of contributory negligence.

[We have no doubt that the Act of 1877, and that of 1883, require the mine boss to keep a sufficient supply of props in the rooms where the miners are engaged at work; and that, if the injury can be traced directly to such neglect, the defendants will be liable for the injury, unless the negligence of Biddle, the plaintiff, contributed to the injury. The Act of Assembly, upon close examination, seems plain enough to us; it provides: "In order to better secure the proper ventilation of every coal mine, and promote the health and safety of the persons employed therein, the owner or agent shall employ a competent and practical inside overseer, to be called mining boss, who shall keep a careful watch over the ventilating apparatus, air-ways, traveling-ways, pumps, pump-timbers and drainage, and shall see that as the miners advance their excavations all loose coal, slate and rock overhead are carefully secured against falling in or upon the travelling-ways, and that sufficient timber is furnished of suitable lengths and sizes for the places where they are to be used, and placed in the working places of the miners."

We say under this Act of Assembly it was the duty of the mining boss, superintendent, or the owners of the mine to see that these props were put in the rooms of the miners, or that they had easy and quick access to them; and if the mining boss, or the owners of the mine, neglected to provide props as required by the Act, and the injury can be traced directly to such neglect, the defendants are liable for damages for the injury to the plaintiff, unless the negligence of the plaintiff himself contributed to it.

But it does not follow that because there is an Act of Assembly saying it is the duty of the mining boss to furnish sufficient timber of suitable lengths and sizes to be used as props, that therefore the defendants are responsible in damages for the injury to this plaintiff.

That alone does not make out the case. It was the duty of Mr. Reese, the mining boss, to have the props there, and they were not there; but the question is, how did this injury occur? It does not follow, even if Mr. Reese, the mining boss, did not comply with the statute, that the plaintiff must necessarily recover. It may be that if the props had been at hand in the

[Reese *v.* Biddle.]

room when needed, and a prop had been used at the proper place by the plaintiff, this fall would have been prevented. That a prop would have been used by him seems reasonable, because he was inquiring about props.

If there was no imminent danger apparent, no pointing out of this loose mass, no caution as to mining under it, and if the props were not at hand, and the plaintiff was hurt by an unexpected fall, the defendants are liable.] (Second assignment of error.) But if the plaintiff knew of, and saw the danger of the fall of loose material, and was cautioned of the imminence of that danger, and he recklessly went on mining with that loose mass suspended overhead, without pulling it down, if it could have been safely taken down, and without waiting till he could get props in place, then his own negligence contributed to the injury, and he cannot recover. The evidence in the case is wholly for you; you must determine whether there was contributory negligence on the part of the plaintiff. If there was, he cannot recover. If there was no contributory negligence, he can recover. There are cases when the uncontradicted evidence enables the court to charge the jury that the facts proven do or do not constitute contributory negligence, and there have been some points presented in this case asking us substantially to do so; but there are, in our opinion, facts in evidence affirmed on the part of the defendants' witnesses and denied by those of the plaintiff, which are for the jury. It does not follow, when we decline to answer a point, as when asked to say that such and such acts constitute contributory negligence, and we refuse to say so, that, therefore, we mean that there was no contributory negligence. In answering a point of that kind in that way, we mean that the question is for the jury and not for the court.

In this case it is our duty to charge you as to the measure of damages. Of course, if you find for the defendants you have nothing to do with this question. The rule as to damages is that the person injured can only claim for his actual injury. The amount he can recover can only be such as to compensate him, or make him whole. The damages may include a reasonable compensation for his sufferings, a reasonable amount for medical attendance, for loss of time consequent upon his confinement, for any permanent injury which he may have sustained, and for any loss in consequence of his being rendered less efficient in business.

Verdict for the plaintiff in the sum of $250, and judgment thereon, whereupon the defendants took this writ, assigning for error the answer of the court to the plaintiff's points and to the defendants' points, and that part of the general charge of the court included within brackets.

[Reese v. Biddle.]

*Coffroth*, (*Russell*, *Colborn & Colborn* with him,) for the plaintiffs in error.—The counsel for the plaintiff in error claim that the first assignment of error is well taken. The court charged the jury that "this case is one in which we have an owner of a coal mine, or superintendent, on the one side, and a miner, a hard working man, on the other." This instruction had a tendency to prejudice the jury at the outstart of the charge, against the "owner of a coal mine, or superintendent," and to create a sympathy for "a hard-working man." As is said by Mr. Justice GREEN, in Stokes *v.* Miller, 10 W. N. Cases, 241, "It could only subserve the purpose of creating a prejudice against the defendants' case, and coming from the Judge, who is always supposed to be impartial between litigants, it may have exerted a powerful influence upon the minds of the jury in producing the verdict which they rendered"; and in Byles *v.* Hazlett, 11 W. N. C., 212, the same learned Judge says: "The objectionable language specified in the assignment would have a tendency to inflame the minds of a jury against the defendants, and in a case of this kind no such incentive should be applied.

The Acts of 1877 and 1883 do not require the props to be cut and stored in the chambers of the mine, but only to be able to supply the demand of the miner on his request.

The servant assumes the risk naturally and reasonably incident to his employment. He is not bound to risk his safety in the service of his master, and may, if he thinks fit, decline any service in which he reasonably apprehends injury to himself. Green & Coates Street Passenger Railway Company *v.* Bresmer, 97 P. St. R., 106.

It is the duty of the plaintiff in an action brought to recover for an injury received in the course of his employment, to show that the injury resulted from the negligence of the defendant, before the defendant can be called upon to answer: Wharton on Negligence, sec. 428; Waters *v.* Wing, 59 P. St. R., 211.

Did the plaintiff's acts contribute to the injury? If they did, there can be no recovery: Creed *v.* Pennsylvania Railroad Co, 86 P. St. R., 139.

*Valentine Hay* and *W. H. Koontz*, for the defendant in error did not print a paper book. They stated that this was owing to the poverty of the defendant in error. The court heard them without paper book.

Mr. Justice PAXSON delivered the opinion of the court, March 15th, 1886.

It was plain error to instruct the jury that the defendants

below were responsible for the negligence of their mine boss. There was no evidence that he was not competent to perform his duties, and hence no negligence can be imputed to defendants for employing him. It has been repeatedly held that a mining boss is such a fellow servant as in case of an injury to other employees through his negligence the master is not responsible. It is sufficient to refer to Lehigh Valley Coal Company *v.* Jones, 86 Penn. St. Rep., 432; Delaware & Hudson Canal Co. *v.* Carroll, 89 Id., 374; Keystone Bridge Co. *v.* Newbury, 96 Id., 246. It is to be presumed the attention of the court below was not called to these cases, as ours certainly has not been. As the case stands, it is our plain duty to reverse upon the second, third and fourth assignments.

We might stop here. A careful examination of the testimony compels us to reverse also upon the fifth and sixth assignments, which respectively called upon the court for a binding instruction in favor of the defendants. This instruction should have been given. There was no proof—not even a scintilla—of the negligence of any one but the plaintiff himself. He was injured by the falling of a portion of the roof of the mine; the falling could have been prevented by a single prop. It was the duty of the plaintiff to have put that prop there, and there were plenty of props conveniently at hand at the mouth of the mine to have used. None of these facts is disputed. They were proved by his own witnesses, and they show that he has no case.

Judgment reversed.