## Haléy *v.* Keim, Receiver, Appellant.

[Marked to be reported.]

*Negligence—Mine owner—Mine boss—Miner—Fellow servant.*

A mine boss is a fellow servant of the miner, and where an operator of a coal mine has used reasonable care in the selection of a mine boss, he is not responsible to a miner for an injury to him resulting from the negligence of the mine boss.

*Mine boss—Mine owner—Knowledge of condition of mine.*

Defendant took possession as purchaser of the mine where the accident occurred on Aug. 20, the day of the accident. The mine boss, White, was paid for Aug. 20 by the former owner, defendant paying him from Aug. 21. An adjoining mine owned by defendant took fire and defendant company sealed up the surface openings to smother the fire. The gases generated by the fire found their way into the other mine by means of openings negligently left by the mine boss of the mine where the accident occurred. Defendant was not warned that the openings in question had not been closed.

*Held*, that it was error to submit to the jury the question whether or not White was mine boss. He had been paid for all of his time, and was acting as mine boss, and the negligence of which he was guilty was committed by him prior to the transfer, when there was no dispute as to his being mine boss.

*Held,* also, that it was not negligence for defendant to seal up the other mine to smother the fire. Defendant was not bound to know that the openings had been left open.

Argued May 23, 1892.    Appeal, No. 239, Jan. T., 1892, by defendant, Geo. DeB. Keim, receiver of the P. & R. C. & I. R. R. Co., from judgment of C. P. Northumberland Co., Sept. T., 1885, No. 478, on verdict for plaintiff, Barbara E. Haley.    Before PAXSON, C. J., STERRETT, WILLIAMS, GREEN, McCOLLUM, MITCHELL, and HEYDRICK, JJ.

Trespass for damages for death of plaintiff's husband while working in defendant's colliery by reason of alleged negligence of defendant.

On the trial before ROCKEFELLER, P. J., the evidence was to the following effect: Greenback colliery, in which plaintiff's husband lost his life, had been sold to defendant, who took possession on Aug. 20, 1884, the day of the accident.    Luther, chief mining engineer, came to take possession; with him was Booth, division superintendent.    One White had been mine boss for the previous owner.    The adjoining mine of Buck Ridge, owned by defendant, was found to be on fire, and all the surface openings were closed so as to smother the fire. Booth directed White to send men down in the Greenback colliery to drive a hole through the pillar separating the two collieries for the purpose of turning a stream of water through the Greenback into Buck Ridge to flood the latter colliery. White sent plaintiff's husband, and others, who lost their lives by inhaling gas which escaped from the Buck Ridge mine into the Greenback mine through openings which had been negligently left unclosed in the Greenback mine.    Further facts appear by the opinion of the Supreme Court.

The court charged the jury in part as follows:

"I have come to the conclusion, gentlemen of the jury, to hold, and so instruct you, that William Booth, the division superintendent, was not a fellow servant and that his act was binding upon his principal, the company, or party defendant in this case; and if the injury or accident, that caused the death of Patrick Haley, was in consequence of the negligence of William Booth, the division superintendent, then the defendant would be liable; and in that case your verdict should be in

favor of the plaintiff, and I will presently call your attention to the rule that is to govern you in fixing the amount of damages in case you should find in favor of the plaintiff. [8] . . . .

" Now you will determine whether or not it was negligence on the part of Mr. Booth, the division superintendent, in sending Patrick Haley down into the mine, knowing that the fire was raging and that gases were being generated and liable to come through from the Buck Ridge colliery into the Greenback colliery at the place where Patrick Haley was sent to do work. You must, of course, take into consideration all the facts and circumstances in evidence in relation to this matter. That there were three holes from the Buck Ridge colliery into the Greenback colliery at the line pillar, as it was called by the witnesses, there is no doubt. It has been proven by several witnesses and is undisputed, and some of the witnesses testified that Mr. Booth knew of these holes—that there were such communications between the two mines—that he had been there on former occasions and he seems to have known all about it, and I leave it to you to determine from all the evidence in the case whether he was guilty of negligence whilst he was so acting as the agent, or division superintendent, of the defendant, at the defendant's two collieries. [9] . . . .

" It is also alleged on the part of the defendant, that any air or gases that might have gotten in or through from the Buck Ridge workings into the first lift gangway were also stopped off and could not have gotten into the air way that was used to carry fresh air down into the mines at the place where Patrick Haley lost his life. And that is a question for you to determine, whether that is so or not. You heard the testimony in regard to the door that it is alleged was placed in that first lift gangway for the purpose of turning the air, or preventing the air and gases from going through into the mines at the place where they were being worked. You have the testimony, in regard to that, of Mr. Schreffler and Mr. Jefferson, as to their having closed that door on the 21st of August, at the time they were making an effort to get the men, who had been suffocated, up out of the mine. [10] . . . .

" Now this door referred to by Mr. Shreffler and others was not closed, it was not tight, and doubtless if you believe their evidence, the gases came through that door. Who made that

door or how it came to be there is not in evidence, but you
have the fact that it was there, if you believe the testimony of
Mr. Shreffler and Mr. Johnson, and you will determine whether
it is not plain that if it was there it was put there by the de-
fendant company. [11] . . . .

"Now another very important question in this case is as to
whether the injury, that is, the loss of life of the plaintiff's
husband, was in consequence of the negligence of the mining
boss. That is one of the principal contentions in this case.
The Greenback colliery had been in possession of and worked
by Mr. Toudy for some time ; several years, perhaps, prior to
the 20th of August, 1884, the time of the accident. He had in
his employment one Andrew G. White, as inside foreman, or
mine boss. Mr. White had been engaged in mining, as he
states, nearly all his life and had been underground mining
boss at the Greenback colliery several years just previous to
the taking possession by the defendant. He was Mr. Toudy's
mine boss up to the time that the defendant, the company,
took possession, on the afternoon of the 20th of August.
About that there seems to be no dispute. Then Mr. Booth,
the division superintendent, came there on the premises at the
Greenback colliery for the purpose of taking possession ; or
rather Mr. Luther. At least the agents of the defendant came
there on that afternoon for the purpose of taking possession
between two and three o'clock. Now the plaintiff alleges that
Mr. White did not become, at that time, the mining boss of
the defendant, but that he was employed by the defendant and
went to work for the defendant shortly afterwards, and the
contention is, on the part of the plaintiff, that Mr. White was
not acting in the capacity of mining boss on the afternoon that
Patrick Haley and the others were sent down in the mines to
do the work that I have referred to. That is a question that
I leave to you to determine from the evidence in the case.
You will recollect the testimony of several witnesses, and I
need not refer to them by name, indeed Mr. White is one of
them who stated that in the afternoon of the 20th of August,
Mr. Booth came there, and after talking over matters, author-
ized Mr. White, who the defendant claims from that time be-
came the mining boss or underground foreman, at that time, to

employ hands for the purpose of going down into the second lift at the face for the purpose of doing the work. [12] . . . .

" Now I leave it to you to determine for yourselves from the evidence in the case, whether, at the time of the accident, or at the time Patrick Haley was employed to go down into the mines, Mr. Andrew G. White was the mining boss or underground foreman in that mine." [13] . . . .

Plaintiff's points were as follows:

" 1. If the jury believe that Patrick Haley was killed in the course of his employment by or through the negligence of the defendant, and that such negligence was the direct and proximate cause of his death, the defendant is responsible, whether such employment was hazardous or not. *Answer :* This point is affirmed. That is, when I say affirmed I mean I charge you as requested." [14]

" 2. If the jury believe that the defendant ' voluntarily subjected ' Patrick Haley, his servant, to dangers, such as in good faith defendant ought to have provided against, defendant is liable for the accident which caused his death." Affirmed. [15]

" 3. It was the duty of defendant not to subject Patrick Haley, its servant, to extraordinary dangers which the defendant ought to have foreseen and prevented." Affirmed. [16]

" 4. If the jury find that the defendants were negligent in this, that they did not notify Patrick Haley that the shafts and openings of the Buck Ridge colliery were closed and that the poisonous and deadly vapors and gases engendered by the fire raging therein were liable to pass into the workings of the Greenback mines through holes and openings existing between the two mines and of which the defendants had knowledge, then the defendants failed in their duty to the said Patrick Haley and the plaintiff is entitled to recover in this case. *Answer :* This point is affirmed, but I refer the jury to the evidence and what I have said in the general charge in relation as to whether the injury was occasioned by the negligence of the defendant; that is, by the division superintendent acting as agent of the defendant in this branch of the business ; and whether the plaintiff is entitled to recover or not must depend on the other questions of fact which I have submitted to the jury." [17]

" 5. It is for the jury to say whether Andrew G. White was

the inside foreman for the defendants at the time of the accident." Affirmed. [18]

" 6. It was the duty of the defendants to provide for Patrick Haley 'a reasonably safe place in which to work.' ' That this was a direct personal and absolute obligation ' which the defendant owed the said Haley, and if the defendant delegated this duty to William Booth and Andrew G. White, or either of them, then the person or persons to whom such duty was delegated stood in the place of the defendant, and the defendant is responsible for his or their acts, and if the said Booth or White performed their duty carelessly or negligently it was the negligence of the defendant. *Answer*: This point is affirmed, except that I charge you that if Andrew G. White was the duly appointed mining boss, and there being no evidence of his incompetency, the defendant is not responsible for his acts, and if he performed his duty carelessly or negligently it was not the negligence of the defendant." [19]

" 7. Defendant was in duty bound to provide a reasonably safe place, appliance and machinery around about which deceased was employed to work at the time he was injured ; and if defendant voluntarily subjected deceased to dangers which defendant ought to have provided against, and the death of the deceased on August 20, 1884, was a result of a want of a proper provision against such danger, the defendant may be held liable in this action." Affirmed. [20]

" 8. Even though the jury should find that Andrew G. White was the inside foreman, yet if they believe that defendant knew of the openings connecting the two mines, and that said White had no knowledge of them or of the closing up of the shafts and other surface openings to the Buck Ridge mines, then it is for the jury to say whether the defendant was not guilty of negligence in failing to inform said White of the existence of the said openings connecting said mines and of the fact that the outlets to the Buck Ridge mines had been closed up." Affirmed. [21]

" 9. Even if the jury believe that Andrew G. White knew of the communications existing between the workings of the two mines, yet if they find that defendant failed to inform him of the fact that the outlets to the Buck Ridge mines had been

closed up, it is for the jury to say whether the defendant was not guilty of negligence in failing so to do." Affirmed. [22]

" 10. Even though the jury believe that Andrew G. White was inside foreman for the defendant at the time of the accident and was negligent in the performance of his duties, yet if they find that the defendant was also negligent and that defendant's negligence concurred with that of White in causing the accident, the defendant would be liable and the plaintiff would be entitled to recover in this action." Affirmed. [23]

Defendant's points were as follows, among others :

"1. That under all the evidence in this case the plaintiff cannot recover and the verdict should be in favor of the defendant. *Answer :* I do not answer this point as requested. Whether the plaintiff is entitled to recover or not must depend on how the jury find upon the questions of fact submitted to them under the evidence in the case." [24]

"4. The evidence of plaintiff and defendant shows that the inside foreman or mine boss, their assistants and the men selected by them to work in Greenback colliery on the 20th day of August, 1884, including the plaintiff's husband, were all engaged in the same common work and performed duties and services to effect the same general object, and each had his branch of work to perform, but, being engaged in the same common business, were servants or fellow-workmen, seeking to reach the same common object and accomplish one common purpose, and, if Patrick Haley, the plaintiff's husband, lost his life through the negligence of any one or more of those persons so employed and engaged, he and they were fellow servants, and the plaintiff cannot recover for any damages sustained by reason of such loss of life of the deceased, because the deceased, when he entered the service of the defendant took on himself all the ordinary risks of the employment in which he engaged, and injuries resulting from the negligent acts of the inside foreman or other fellow-workmen in the general course of his employment are within the ordinary risks for which the employer, the defendant, is not liable. *Answer :* This point is correct provided you find Andrew G. White was the mining boss of the defendants at the time the plaintiff's husband was sent into the mine to work." [25]

Verdict and judgment for plaintiff for $4,000. Defendant appealed.

*Errors assigned* were (1–7) rulings on evidence as to character of mines, etc., not considered; and (8–25) instructions, quoting them as above.

*S. P. Wolverton, C. M. Clement* with him, for appellant.—This accident happened through the negligence of White, the mine boss. A master may delegate duties to other competent persons : Wood's Master and Servant, § 411. Master does not warrant safety of servant's situation: Northcoate v. Bachelder, 111 Mass. 327. And is not liable unless he knew or should have known of the defect: Wood, M. & S., § 414.

Defendant is not liable for negligence of inside foreman : Waddell v. Simoson, 112 Pa. 567; Reese v. Biddle, 112 Pa. 72; D. & H. Canal Co. v. Carrol, 89 Pa. 374; Redstone Coke Co. v. Roby, 115 Pa. 364; Howells v. Landore Siemens Steel Co., L. R. 10 Q. B. 62. As to relation of principal and vice-principal, see Ross v. Walker, 139 Pa. 49.

Negligence to be actionable must be breach of legal duty: Phillips v. Craft, 139 Pa. 125; Ford v. Anderson, 139 Pa. 263; Titus v. R. R., 136 Pa. 618.

*W. H. M. Oram,* for appellee.—Defendant's argument is based on disputed facts which have been settled by the verdict of the jury. The defendant contended that there was an inside foreman or boss, White, at the time of the accident; plaintiff denied this and contended that Booth, division superintendent of defendant company, sent plaintiff's husband into the mine where he lost his life; that White was not mining boss on Aug. 20, the day of the accident; that his employment by defendant only began on the 21st, as defendant never paid him for August 20. White so testifies.

A master must not expose his servants to unnecessary risks : Tissue v. R. R., 112 Pa. 91; Rummell v. Dilworth, 111 Pa. 343; Mullan v. Steamship Co., 78 Pa. 25; Trainor v. R. R., 137 Pa. 149. It is the master's duty to inform employee of dangers: Hoffman v. Clough, 124 Pa. 505.

Cases cited by appellant as well as Lehigh Val. Coal Co. v. Jones, 86 Pa. 432, were decided on the ground that coal company had performed the duty imposed on them by statute of employing skillful mine foreman. This does not apply to division superintendent.

A master is liable for injury caused by a fellow servant where he is himself negligent: Johnson v. Bruner, 61 Pa. 58 ; Grand Trunk R. R. v. Cummings, 106 U. S. 700 ; Hough v. Texas & Pacific R. R., 100 U. S. 213 ; P. W. & B. R. R. v. Keenan, 103 Pa. 124 ; Ford v. Fitchburg R. R., 110 Mass. 240 ; Elmer v. Locke, 15 Am. & Eng. R. R. Cas. 300.

Where a master delegates to an agent a distinct branch of his business, he is responsible for the acts of such agent: Tissue v. R. R., 112 Pa. 91 ; Mullan v. Steamship Co., 78 Pa. 25 ; N. Y., L. E. & W. R. R. v. Bell, 112 Pa. 400 ; Trainor v. R. R., 137 Pa. 149 ; Grand Trunk R. R. v. Cummings, 106 U. S. 700 ; Hough v. R. R., 100 U. S. 213.

OPINION BY MR. CHIEF JUSTICE PAXSON, October 3, 1892.

This is an important case, and it is for this reason perhaps that its discussion, both at bar and in the paper books, has taken an unnecessarily wide range. As we view the case it turns upon a single point.

By the defendant's fifth point the learned judge below was asked to instruct the jury that if they believed from the evidence in the case, that Andrew G. White was inside foreman or mine boss at Greenback colliery at the time of the accident, and that the plaintiff's husband lost his life through the negligence of the said Andrew G. White in not properly examining the air-ways and ventilation of the said colliery, and taking the proper precautions to prevent the escape of noxious or poisonous gases from Buck Ridge colliery, or any other source, into Greenback colliery where the plaintiff's husband was employed, the plaintiff cannot recover because such negligence would be the negligence of a fellow servant, and within the ordinary risks taken into consideration at the time said Patrick Haley became employed as a workman at Greenback colliery. This point was affirmed.

That this ruling was correct is settled by Delaware & Hudson Canal Company v. Carrol, 89 Pa. 374 ; Reese v. Biddle, 112 Pa. 72, and a number of other cases, in which it was distinctly held that a mine boss is a fellow servant of the miner, and that where an operator of a coal mine has used reasonable care in the selection of a mine boss, he is not responsible to a miner for an injury to him resulting from the negligence of the mine boss.

Up to this point we find no fault with the ruling of the court below.   The error into which the learned judge inadvertently fell, was in submitting to the jury the question whether Andrew G. White was inside foreman or mine boss at Greenback colliery at the time of the accident.   The submission of such a question to the jury in a case of this description, whether with or without evidence, could lead only to a verdict for the plaintiff.   The law is practically so administered in Pennsylvania. It is therefore especially important to inquire whether the facts justified such submission.   The plaintiff's husband lost his life by inhaling deadly gases in what is known as the Greenback colliery on the 20th of August, 1884.   Prior to that day one H. J. Toudy was the owner of this colliery and operated it. He sold it to the defendant company, which owned an adjoining colliery, called the Buck Ridge mine.   The formal delivery of the mine was made on the afternoon of the day before mentioned.   Early in the morning of that day, and before the formal transfer, a fire was discovered in the underground workings of the Buck Ridge mine.   The gases generated by this fire found their way into the Greenback colliery by means of openings between the two collieries.   It was clearly the duty of the mine boss of the Greenback colliery to have closed these openings, and thus prevent the impure air from entering it. It was the neglect of this duty which caused the accident.   Of this there cannot be a shadow of doubt as the Greenback colliery was shown to be free from impure air until the fire broke out in the Buck Ridge colliery.   At the time of the transfer the fact was known to the parties that the Buck Ridge colliery was on fire.   There was evidence which I do not understand to be disputed that when the defendants took possession of the colliery they inquired of Mr. Toudy, the former owner, as to its condition and were told that it could be worked without regard to Buck Ridge.   In other words, that it was not in any danger from gas from the Buck Ridge colliery.   They could only know this from the report of others competent to judge or from personal inspection.   Mr. White, the mine boss, denied that any inquiries had been made of him by the defendant in regard to the condition of the mine.   Be that as it may, it does not appear that he warned defendant that the openings in question had not been closed up.

With this brief statement of the facts it remains to consider the position of Mr. White. That he was the mine boss under Mr. Toudy is not disputed. That he continued in that employment was proved by a number of reputable witnesses, whose testimony was practically uncontradicted. The only conflicting evidence was that of Andrew G. White himself. This witness was called by the plaintiff and was manifestly an unfriendly witness to the defendant. Indeed, it was alleged that he had a suit pending against the defendant company. Mr. White does not deny that he was mine boss for Mr. Toudy, and, after the transfer, for the defendant company. His allegation that the latter did not pay him for his services on the 20th of August, but that his pay commenced upon the 21st, is the merest quibble. He admitted that he had been paid for the 20th by the Greenback colliery, and that his pay commenced on the 21st by the defendant company. So that in point of fact there was not a moment of time that he was not paid for his services as mine boss. And he was acting as mine boss at the very time of the accident.

Aside from this, the negligence of which he was guilty, and which was the cause of the unfortunate accident, was committed by him prior to the day of the transfer, and when there was no dispute as to his being the mine boss. It was his duty to have kept these openings closed, and it was only the rapid generation of gases by the fire in the Buck Ridge colliery, and the subsequent accident, that disclosed his negligence. It was his duty to have kept those openings closed at all times and under all circumstances to prevent just such accidents as this. Neither he nor any one else could tell at what moment foul air might come in from the Buck Ridge mine, nor from what cause. He had a map of the mines and might and ought to have known of the openings. This is a duty cast upon him by the act of assembly. The most important of all his duties is to see to the proper ventilation of the mine, and to guard against the possibility of such an accident as this. The employment of a mine boss is made compulsory upon the mine owner, and there is no allegation that White was not a competent man, much less that his employer knew that he was incompetent. We have repeatedly held, as before stated, that the owner of a mine is not responsible for the negligence of the mine boss, unless

he is incompetent and the owner knows him to be so.   To allow a recovery under the facts as developed would be to fritter away this rule so far as it is applicable to this case.

The fact that the defendant company sealed up its mine to smother the fire, has little importance.   It was not negligence to do this, and it was not bound to know that the openings had been left open by White.  And it is more than probable from the evidence that careful inquiries were made as to the condition of the Greenback colliery before the accident occurred.

We are of opinion that the defendant's first point should have been affirmed without qualification.

Judgment reversed.