Smith v. Coal & Iron Co.

LUKE SMITH, by next friend, *v.* DAYTON COAL & IRON
COMPANY, Limited.

*(Knoxville.*    September Term, 1905.)'

1. **STATUTES.**  Adopted from other States carry with them the
judicial construction thereof, when and when not.
As a general rule, when a statute of another State is adopted,
the judicial construction and interpretation of that statute in
the State of its origin is also imported and written in the stat-
ute by the adopting State; but this general rule is subject to
the important qualification that the judicial construction of said
statute by the State of its origin does not contravene the well
established policy prevailing on said subject in the adopting
State.  *(Post, pp.* 552, 553.)

Cases cited and approved:  Jamison v. Burton, 43 Iowa, 285; Cole
v. People, 84 Ill., 218; McCutcheon v. People, 69 Ill., 601.

2. **MASTER AND SERVANT.**  Master's obligation to furnish
safe working places in mines cannot be delegated so as to es-
cape liability.
A master engaged in mining is bound to use reasonable care to
make the place of work reasonably safe, and he must use rea-
sonable care to ventilate the mine in order to prevent the
accumulation of poisonous and  explosive gases, and he must
shore up and timber the shafts and galleries, and take such
other precautions as may be reasonably necessary to prevent
the fall of rock, earth, etc., and these duties cannot be dele-
gated, so as to exonerate him from liability for a breach there-
of.  *(Post, pp.* 553-559.)

'Acts cited and construed: 1881, ch. 170, sec. 8.

Cases cited and approved: Taylor v. Railroad, 93 Tenn., 305;
Iron Co. v. Pace, 101 Tenn., 484; Railroad v. Jarvi, 3 C. C. A.,
433; Gowen v. Bush, 22 C. C. A., 196; Coal Co. v. Persons, 11
Ind. App., 264.

Smith v. Coal & Iron Co.

Cases cited and distinguished; Heald v. Wallace, 109 Tenn., 346; Finlayson v. Mining Co., 14 C. C. A., 492.

Case cited and disapproved: Railroad v. Hughes, 119 Pa., 314.

3. SAME. SAME. Same. Same. Employment of competent mining boss does not exonerate mining operator from liability for the negligence of such boss.

Our statute (Acts 1881, ch. 170, sec. 8), requiring the operator of a coal mine to employ a competent and practical inside overseer or mining boss to protect the miners working therein, must be construed to impose upon such operator the duties imposed at common law on the employer to provide a safe place to work, which duty cannot be delegated; and such operator who employs a competent mining boss is nevertheless chargeable with his negligence, resulting in injury to a miner; although such statute is adopted from the State of Pennsylvania after the courts of that State had construed the act to exempt such operator from the negligence of the mining boss, if he was competent to perform the duties, since such construction is contrary to the policy of our laws.

Acts cited and construed: 1881, ch. 170, sec. 8. But see Acts 1901, ch. 37.

Cases cited and disapproved: Coal Co. v. Jones, 86 Pa., 441; Canal Co. v. Carroll, 89 Pa., 374; Reese v. Biddle, 112 Pa., 79, 80; Waddell v. Simoson, 112 Pa., 573, 574; Railroad v. Hughes, 119 Pa., 314; Haley v. Keim, 151 Pa., 117; Lineoski v. Coal Co., 157 Pa., 153; Williams v. Coal & Coke Co., 44 W. Va., 599; Coal Co. v. Lamb, 6 Colo. App., 255.

FROM RHEA.

Appeal from the Circuit Court of Rhea County.—Joseph H. Higgins, Judge.

Smith v. Coal & Iron Co.

A. P. HAGGARD and SAM H. FORD, for plaintiff.

BURKETT, MILLER & MANSFIELD, for defendant.

MR. JUSTICE M'ALISTER delivered the opinion of the Court.

Luke Smith, a minor, brought this suit by his next friend against the Dayton Coal & Iron Company to recover damages for personal injuries sustained while working in defendant's mines.

The declaration embraces three counts, and complains (1) of the negligence of the mine boss in failing to properly inspect the mine; (2) for breach of duty on the part of defendant in failing to furnish plaintiff a safe place to work; (3) the failure of defendant to warn plaintiff of the danger.

A demurrer was interposed to the first and second counts of the declaration, assigning for cause that defendant was not liable for any breach of duty on the part of its mine boss; it not being averred that it had failed to exercise due care and caution in employing him.

The circuit court, Hon. M. D. Smallman presiding, sustained this ground of demurrer, holding that, if defendant company employed a careful and competent inside overseer or mine boss, as required by section 8, c. 170, p. 238, Acts 1881, and that by reason of the negligence, inattention, or carelessness of such boss the

115 Tenn.—35

plaintiff was injured, he could not recover on account of such injury.

The third count of the declaration alleged a breach of duty on the part of the defendant in failing to employ a certified mine foreman, as required by chapter 37, p. 51, Acts 1901.

The demurrer to this count of the declaration assigned as cause that the act in question did not take effect until after the accident, and hence compliance with said act was not required.

This ground of demurrer was also sustained by the circuit judge.

A plea of not guilty was also interposed to the three counts of the declaration. There was a trial on this plea, wherein the plaintiff and defendant each presented their evidence as though there had been no judgment on the demurrer. At the conclusion of the evidence the trial judge instructed the jury as follows:

"A demurrer to the declaration was interposed by the defendant and acted on by my predecessor, and I am of the opinion that it reaches all the facts in the evidence, if any, there be, which would warrant a recovery, and, being bound by the action of my predecessor on the demurrer, I am of the opinion there are no questions of fact to submit to the jury, and it will be your duty to find a verdict in behalf of the defendant."

This was accordingly done, whereupon plaintiff appealed and has assigned errors.

An examination of the record reveals that the only ac-

tionable negligence claimed on the trial was the failure of the mine boss to perform the duties required of him by the statute, and hence the only question presented for our determination is whether the trial judge was correct in his ruling that, as between the coal company and the mine boss, the principle of *respondeat superior* would not apply for injuries sustained by an employee in consequence of the negligence of the mine boss. This was the question presented by the demurrer and which was resolved in favor of the contention of the defendant company. The proper solution of this question depends upon a proper construction of chapter 170, p. 234, Acts 1881, entitled: "An act to provide for the ventilation of coal mines and collieries for the protection of human life."

Section 8, p. 238, of that act provides as follows:

"That to better secure the ventilation of every coal mine and colliery and to provide for the life and safety of the men employed therein, otherwise and in every respect, the owner or agent, as the case may be, in charge of every coal mine and colliery, shall employ a competent and practical inside overseer to be called 'mining boss,' who shall keep a careful watch over the ventilating apparatus, over the airways, traveling ways, pumps, and sumps, and the timbering, and see, as the miners advance in their excavations that all loose coal, slate or rock overhead is carefully secured against falling; . . . and all things connected with and pertaining to the safety of the men at work in the mines."

It should be remarked that no complaint is made that the company breached its duty in employing an unskilled and incompetent mine boss. The contention on behalf of plaintiff is that the circuit judge was in error in holding that the defendant company, having in the first instance employed a competent mining boss, was not afterwards liable for any negligence or breach of duty on the part of said boss. The action of the circuit judge seems to have been based on the construction of our mining statute, which is a transcript of the Pennsylvania act, and which had been construed by the Pennsylvania courts prior to its adoption in this State in 1881.

As already seen, the duties of the inside mining boss are specifically defined by the act of 1881, and the company is required to employ him in obedience to the mandates of the statute. The question presented is whether, in the performance of his statutory duties, the mining boss acts as vice principal, or whether he is a mere fellow servant, as already stated. It is argued that our act of 1881 is a literal copy of chapter 1, Acts Pa., 1870 (P. L. 3), and that at the time our statute was enacted the Pennsylvania statute had undergone a uniform construction by the supreme court of that State. It was held by the Pennsylvania court that the duties imposed by section 8 were duties of the mine boss, whom the operator was by law compelled to employ, and, if the mine boss failed to discharge his duties, he was personally liable in damages and also to criminal prosecution. It is admitted that under the first section the company

would be liable in damages for a breach of its statutory duty in failing to employ a competent and practical mining boss; but it is insisted that the company, having discharged its duty and employed a competent and practical mining boss, it is not liable in damages for his failuse to perform the duties which the statute has enjoined upon him.

In the case of *Lehigh Valley Coal Co.* v. *Jones,* 86 Pa., 441, it was said:

"Nor do we think liability of the company for the act of its mining boss is changed, where he is appointed pursuant to statute, by the fact that he has a superintendent over him who has the power to direct and control him. We discover no sound reason for any distinction. In either case the company must appoint a competent and suitable person and provide safe machinery. He [the boss] is to carefully watch and to see for the purpose of protecting from danger all the men at work in the mine, says the statute."

The act was again construed by the supreme court of Pennsylvania in 1879, in the case of *Del. & Hud. Canal Co.* v. *Carroll,* 89 Pa., 374. In that case it was said as follows:

"It is too plain for argument that, if the defendants have not violated said act, they are not responsible. In what respect have they transgressed its provisions? They employed a mining boss as required by the act, and there is no allegation that he was not competent and a practical man. No attempt was made to show that defend-

ants were guilty of negligence in not employing a mining boss, that they employed an incompetent man, or that they employed him without knowledge of his capacity or fitness and without making inquiry as to his qualifications, as a man of ordinary prudence would do. The defendants, having placed such mining boss in charge of the work, are not in default. The negligence of the boss, if it exists, might make him liable to the plaintiffs. It certainly cannot render this defendant liable under this act of the assembly."

In *Waddell* v. *Simoson,* 112 Pa., 573, 574, 4 Atl., 725, 726, it is said:

"Moreover, as the defendants had complied strictly with the eighth section of the act of March 3, 1870, in providing a skillful and practical overseer or mining boss, and, as they had thus fulfilled the duty imposed upon them by the general assembly, it is not for this or any other court to charge them with an additional obligation. It is too plain for argument that, if defendants have not violated said act, they are not responsible."

In *Reese* v. *Biddle,* 112 Pa., 79, 80, 3 Atl., 813, 814, it is said:

"It was plain error to instruct the jury that defendants below are responsible for the negligence of their mine boss. There was no evidence that he was not competent to perform his duties and hence no negligence can be imputed to defendants for employing him."

See, also, *Haley* v. *Keim, Rec.,* 151 Pa., 117, 25 Atl.,

98; *Lineoski* v. *Susquehanna Coal Co.,* 157 Pa., 153, 27 Atl., 577.

The supreme court of West Virginia in *Williams* v. *Thacker Coal & Coke Co.,* 44 W. Va., 599, 30 S. E., 107, 40 L. R. A., 812, in construing a similar provision in a statute of that State, which was a copy of the Pennsylvania statute, used this language:

"The operator is left no choice, no discretion in the matter. Although he may himself be a practical miner, possessed of all the qualifications of a mine boss, yet under the statute he is compelled to employ such person. The legislature so far interferes with the private business of the capitalist as to require him to take into his employment a person whose experience in business and sound judgment equip him for such management and the oversight of the conduct of the mines as to reduce the danger thereof to a minimum. The duty of the operator or agent is to employ a competent mine boss according to the provisions of the statute, and when he has done so he has discharged his duty to his employees in relation to those duties which the statute prescribes shall be performed by such mine boss, and the operator or agent is not liable for injuries arising from the negligence of the mine boss, who is not a vice principal, as his duties are not delegated to him by his employer, but are prescribed by the statute; but he is a fellow servant, and, in case of injury to other employees through his negligence, the master is not responsible."

It may be stated as a general rule that, when a statute of another State is adopted, the judicial construction and interpretation of that statute in the State of its origin is also imported and written in the statute by the adopting State. This rule, however, is subject to the important qualification that the judicial construction of said statute by the State of its origin does not contravene the well-established policy prevailing on said subject in the adopting State. As said by Endlich on Interpretation of Statutes, p. 518:

"But as applied to transcribed statutes, this rule is undoubtedly subject to important qualifications. Whilst admitting that the construction put upon such statutes by the courts of the State from which they are borrowed is entitled to respectful consideration, and that only strong reasons will warrant a departure from it, its binding effect has been wholly denied, and it has been asserted that a statute of the kind in question stands upon the same footing, and is subject to the same rules of interpretation as any other legislative enactment. And it is manifest that the imported construction should prevail in so far as it is in harmony with the spirit and policy of the legislation of the home State, and should not, if the language of the act is fairly susceptible of another interpretation, be permitted to antagonize other laws in the face of the latter or to conflict with its settled practice."

In *Jamison* v. *Burton,* 43 Iowa, 285, it was said:

"The limitation that the construction by another State

of a statute of that State enacted here will be valid only when consistent with the spirit and policy of our laws, is eminently proper.  For otherwise we could not avail ourselves of the legislative wisdom of other States without introducing along with it incongruous and inharmonious judicial consruction.''

In *Cole* v. *People,* 84 Ill., 218, it was said: '

"It can hardly be said that the legislature, in adopting the statute of another State, intended also to adopt a construction in direct antagonism with our laws and in conflict with a practice that has prevailed under them for a long series of years.  At most it is but a presumption and may be repelled when such construction is found to be inconsistent with the spirit and policy of our laws." *McCutcheon* v. *People,* 69 Ill., 601.

We think these authorities announce the true rule, and we proceed to inquire whether the imported construction of the transcribed statute contravenes the spirit and policy of our laws.  At common law a master who is engaged in the business of mining is bound to use reasonable care to make the place of work reasonably safe.  He must therefore use reasonable care to ventilate the mine in order to prevent the accumulation of poisonous and explosive gases.  He must also shore up and timber the shafts and galleries and take such other precautions as may be reasonably necessary to prevent the fall of rock, earth, etc. ' Amer. & Eng. Ency. Law, vol. 20, p. 58; *Union Pacific Railway* v. *Jarvi,* 53

Fed., 65, 3 C. C. A., 433; *Gowen* v. *Bush,* 76 Fed., 349, 22 C. C. A., 196.

It is assumed by counsel that this court in *Heald* v. *Wallace,* 109 Tenn., 346, 71 S. W., 80, decided that the doctrine of a safe place to work did not apply to mining operations. In that case it appeared that at the time of the accident deceased was engaged in driving the neck of a room, and under the rules and custom of the company, it was the duty of the miner to make the necessary tests of his room neck and if he discovered it was not safe, he was charged with the duty of sending for the timberman, etc. It was said in that case that, according to the testimony of plaintiff's witnesses, the duty of inspecting the changing top of a room neck is the same as in any other part of the room. This court held that the doctrine of a safe place to work does not apply to such places as are constantly shifting and being transformed as the direct result of the employees' labor. When he engaged in a work of making a place that is known to be dangerous safe, or in work that necessarily changes the character for safety of the place in which it is performed as the work progresses, the hazard of the dangerous place, and the increased hazard of the place made dangerous by the work, are the ordinary and known dangers. Citing *Finlayson* v. *Mining Co.,* 14 C. C. A., 492, 67 Fed., 510.

But we did not hold that the company was under no obligation to make its permanent places of work reasonably safe for its employees. We had already held in

Smith v. Coal & Iron Co.

*Iron Co.* v. *Pace,* 101 Tenn., 484, 48 S. W., 232, that it is the duty of the master to keep his premises used in the prosecution of his business in a reasonably safe condition, and if he fails to do so he is liable to the servant for all injuries resulting to him from such defects, and that this rule applied to a mining corporation. It was also held in that case that the company was liable for failure of the mine boss to examine every morning the mines not only for noxious and explosive gases, but for mine dust or other explosive substances that may endanger the life or health of the miners and remove every such thing, etc., as required by section 8 of the act of 1881. But in that case one of the counts of the declaration proceeded upon the idea that the company had been negligent in the employment of the mining boss and that the latter was incompetent to perform his duties, and there was proof tending to establish this allegation.

It must be admitted in view of the authorities that the duties devolved by the statute on the mining boss were not different from those that the company was obliged to perform at common law, and which the company would not have been authorized to delegate and thereby escape liability for the nonperformance of those duties. What, then, is the effect of the statute requiring the company to employ an inside overseer or mine boss and devolving upon him the duties which, at common law, belong to the company? As already seen, the Pennsylvania and West Virginia courts, in construing this statute, have held that the effect thereof was to shift

the responsibility for the negligent performance of these duties upon the mining boss, since the company was compelled to employ him and his duties were specifically defined by the statute.

To the same effect is *Colo. Coal Co.* v. *Lamb,* 6 Colo. App., 255, 40 Pac., 251.

Mr. Thompson, in his work on Negligence (volume 4, cl. 4206), in combating the doctrine of the Pennsylvania and West Virginia courts, used the following language:

"The employment of a mine boss or mine foreman: When it is recalled that the duty of exercising care, to the end that the mines shall be a reasonably safe place within which his employees are to work, is an absolute and unassignable duty, it quite readily follows that the owner of a mine does not, by employing a so-called 'mining boss,' or 'mine boss,' or 'mine foreman,' who is competent and fit for his duties, release himself from the obligation of taking those precautions which are necessary for the reasonable safety of his miners, nor from the necessity of taking the precautions prescribed by the statute law, although the statute law requires him to employ a mine boss. The effect of such a statute is to prescribe the duties owing by the master, and the fact that the mine boss is required to be employed to perform those duties does not release the master from the obligation of performing them or of seeing that they are performed. . . . Contrary to the above, we find an untenable and regrettable decision to the effect that a mine owner discharges his full duty to his miners when he

complies with the statute requiring him to employ a properly qualified person to discharge the duties required therein as to the care and inspection of the mine, and is not liable for accidents traceable to the carelessness or negligence of such person, who is a fellow servant with the other miners. Reasoning on similar lines, another court holds that the employment of a competent mine boss, as required by the statute, discharges the full duty prescribed by the statute, and that the employer is not liable for the negligence of the mine boss in the performance of those duties which the statute prescribes shall be performed by him. He is not a vice principal, and his duties are not delegated to him by his employer, but are prescribed by the statute."

On the latter proposition Mr. Thompson cites Pennsylvania and West Virginia cases. The only authority cited by him for his text in opposition to the rulings in Pennsylvania and West Virginia is the case of *Linton Coal Co.* v. *Persons,* 11 Ind. App., 264, 39 N. E., 214.

In that case the court held that the duties prescribed relating to the safety of the mine are the positive duties of the master and that the statute was intended, not to lessen his duties, but to increase them to the extent of requiring him to employ a competent mining boss to give special attention to the condition of the mine.

In *Gowen* v. *Bush,* 76 Fed., 349, 22 C. C. A., 196, it was held that an employee, who was charged with the duty of inspecting the mine to see that it was free from gas, was not, while thus engaged, a fellow servant of the

miners; and this for the obvious reason that the inspector was in the performance of a duty that devolved upon the principal and the inspector was *pro hac vice* a vice-principal.

In this State the doctrine has always prevailed that it is the duty of the master to provide a reasonably safe permanent place of work for his employees, and that this duty cannot be delegated, so as to exonerate the master from liability for a breach of his duty. In Pennsylvania it appears that a different rule has prevailed. In *Railroad* v. *Hughes,* 119 Pa., 314, 13 Atl., 289, it was said:

"If, however, the company employed competent and skillful persons for the purpose of inspection, and afforded them reasonable opportunities and facilities for the work under proper instruction, the company will not ordinarily be liable for the negligent performance of the work of their employees, to a fellow employee, unless the company knew, or by the exercise of diligence ought to have known, of the defective manner in which the work was being done. The court then held that a brakeman and a car inspector were fellow servants, the same business and that the former assumed the risk of the negligence of the latter in common service."

In this State, however, it is uniformly held that a brakeman and a car inspector are not fellow servants, but in different and distinct departments of the company's service (*Taylor* v. *Railroad,* 93 Tenn., 305, 27 S. W., 663), and that the company is liable for the negli-

gence of the former whereby an injury is sustained by the latter. So that it is obvious that the rule with reference to a safe place to work and the fellow-servant doctrine is entirely different in this State from that which prevails in the State of Pennsylvania; hence the adjudications of that court, exempting a mining company from liability for the negligence of a mine boss employed in obedience to the mandates of the statute, which specifically defined his duties, were in entire accord with the general policy and legal system of that State regulating the relations of master and servant. We are of opinion, however, that the decisions of that State and of the other States which exempt mining corporations from liability for the negligent acts of the mining boss are not in consonance with our general system defining the duties of master and servant.

The act of 1881 is entitled "An act to provide for the ventilation of coal mines and collieries for the protection of human life." But, under the construction of the act contended for, the company is relieved of all positive duty and responsibility in providing safeguards for the protection of human life, when it has appointed a competent and practical inside overseer or mining boss. Surely such a construction could never have been contemplated by the legislature, in view of the express object and purpose of the statute.

We are therefore of opinion that the judgment of the circuit court sustaining the demurrer was erroneous, and must be reversed, and the cause remanded for a new trial.