## Iron Co. *v.* Pace.

### (*Knoxville.* November 11, 1898.)

1. VERDICT. *Supported by sufficient evidence, when*

The Court holds, upon the facts stated in the opinion, that there is sufficient evidence to support the verdict in favor of plaintiff, upon the theory that the explosion that caused plaintiff's injury resulted not from his negligence in blasting, but from the defendant's negligence in failing to provide a competent and diligent mine boss or inspector, and in permitting explosive dust and gas to accumulate in the mine. (*Post, pp. 478–482.*)

2. EVIDENCE. *Opinion as to competency and skill of mine boss.*

That a witness who fails to show sufficient acquaintance with a mine boss to qualify him to testify is permitted to testify, over objection, and to impeach the skill and competency of such mine boss, is not reversible error where two other witnesses with the same disqualification were permitted to testify to the same facts without objection. The evidence in such case is merely cumulative. (*Post, pp. 482, 483.*)

3. SAME. *Report of State Mine Inspector.*

The admission, over objection, of a portion of the report of the State Mine Inspector, to prove that mine dust is explosive, is not reversible error where the objecting party concedes that mine dust is explosive. (*Post, p. 483.*)

4. NEW TRIAL. *Misconduct of jury.*

This Court will not reverse the action of the lower Court overruling a motion for new trial upon the ground that the jurors, while deliberating on their verdict, gave and heard additional facts where several jurors, including the offending juror, denied the charge. (*Post, pp. 483, 484.*)

5. MASTER AND SERVANT. *Degree of care required of master.*

A charge is correct which, taken as a whole, instructs the jury that "it is the duty of the master to keep his premises, used in

Iron Co. *v.* Pace.

the prosecution of his business, in a reasonably safe condition, and, if he fails to do so, he is liable to the servant for all injuries resulting to him from such defects." (*Post, pp. 484–486.*)

6. SAME. *Degree of care required of servant.*

A charge is correct which, in substance, instructs the jury that a servant cannot recover for injury resulting from the dangerous condition of a coal mine, if he knew or could, by the exercise of ordinary care, have discovered and averted the danger and injury. But it is not sufficient that the servant knew, or could, by the exercise of ordinary diligence, have known, of the conditions or defects that existed; he must have known also of the risk or danger attending the conditions or defects, or must have been able, by the exercise of ordinary care, to have discovered the risk or danger. (*Post, pp. 486–489.*)

Case cited and distinguished: Coal Creek Mining Co. *v.* Davis, 90 Tenn., 715.

7. COAL MINES. *Mine boss.*

Under Acts 1881, Ch. 170, the mine boss required to be furnished by the owner of a coal mine, must, every morning, examine the mine not only for noxious and explosive gases, but for mine dust or other things that may endanger life or health of the miners, and remove every such thing, and see that the mine is "free from all danger." (*Post, pp. 484–486.*)

Act construed: Acts 1881, Ch. 170.

---

FROM ANDERSON.

---

Appeal in error from Circuit Court of Anderson County. W. R. HICKS, J.

J. A. FOWLER and JOUROLMON, WELCKER & HUDSON for Iron Co.

D. A. WOODS, X. Z. HICKS, and LUCKY & SAN-
FORD for Pace.

McALISTER, J.' The defendant in error recovered
a verdict and judgment in the Circuit Court of An-
derson County against the Knoxville Iron Company
for the sum of $800, damages for personal injuries.
The company appealed, and has assigned errors.

The declaration charged, in the first count, that
defendant company owned and operated a coal mine
at Briceville, Tenn., and that plaintiff had been em-
ployed by said company to work in said mine; that
it was the duty of the company to keep its mine,
with all its entries, airways, and rooms, properly
ventilated and free from all dangerous and explosive
gases and substances, and to have said entries, air-
ways, and rooms examined and tested by one skilled
in such business every morning before said employes
entered said portion of the mines, and if poisonous
and explosive gases or other substances were found, to
remove the same immediately or prevent the miners
from entering until such removal could be made.
It is then charged that defendant company, on the
occasion in question, had wholly failed to perform
its duty in this behalf, and, in consequence of such
breach of duty, large quantities of mine dust, to-
gether with an explosive gas known as firedamp,
had been allowed to accumulate in the' entries,
rooms, airways, and air currents of said mine. Plain-
tiff alleges that, at the time of the accident, he was

working and driving entry No. 10, on the right of the main entry, mining and drilling, blasting and removing coal and slate therefrom, and, while so engaged, the said mine dust and firedamp gas, which defendant company had negligently permitted to accumulate, had become stirred up, agitated, mixed, and ignited by the blasting shots in said entry, thereby causing a violent explosion, which resulted, without fault or negligence on plaintiff's part, in burning and mangling him about the head, face, body, arms, and legs, whereby he suffered the permanent loss of a great portion of his outer skin, permanently disfiguring him and disabling him from performing manual labor, causing him intense suffering both of mind and body, etc.

It is alleged in the second count of the declaration that it was the duty of the defendant company to employ a competent and practical inside overseer or mine boss, whose duty it was, either in person or by a competent and practical assistant, to examine and inspect said mines, together with the entry in which plaintiff was working, before plaintiff and the other workmen engaged therein entered said mine, and to see that the same was at all times free from dangerous and explosive gases and other substances. It is then charged that said inside overseer or mine boss was unskillful and incompetent, and that this fact was well known to defendant company, and that, on account of his negligence in allowing an accumulation of mine dust and fire-

damp gas, the injury as aforesaid was inflicted upon plaintiff.

Defendant company pleaded not guilty, the statute of limitations of one year, and that plaintiff's own negligence was the proximate cause of the injury.

There is evidence tending to show that the plaintiff, Pace, with a helper, named Smith, were employed by defendant company to work for it in its coal mine, the Cross Mountain Mine, at Briceville, and at the time of the accident these men were engaged in driving an entry, called Entry No. 10, on the right of the main entry of the mine. This was what was known as a dry entry, and large quantities of dust had accumulated near the place where these men were engaged at work. On the day of the injury plaintiff, Pace, and his helper had prepared three blasts in the face of the entry, for the purpose of removing or knocking down the coal between the cutting and the first hole. Fire was applied to the fuse in each of the holes, and the men then retreated down the entry about four hundred and nine feet, when the blasts exploded. Immediately a strong current of wind rushed down the entry, throwing Pace and Smith to the ground, enveloping them with flames, which set fire to their clothing and severely burned their bodies. Pace testified that he was blown from twelve to fourteen feet by the violence of the current.

The controverted question of fact upon the evidence, was whether the flames that burned plaintiff

resulted from mine dust explosion. The theory of the defendant company, upon the proof, was that the accident was caused by the gas and smoke generated by the explosion of the black powder in the three holes driven by Pace and his helpers, and resulted from their negligence in the use of the blasting powder and in the method of driving the holes. It was insisted on behalf of the company that the first two shots heated the air, and that the smoke and gases generated by the powder filled up the entry, and that when the third powder explosion occurred it set on fire these gases and caused the injury. There was also evidence tending to show that the method adopted by the plaintiff in blasting was improper and negligent, and that coal should be mined in what are termed steps or benches, while, on the other hand, there is evidence tending to show that the mining boss had said they could adopt their own methods.

It was insisted on behalf of plaintiff that the injuries were sustained in consequence of a mine dust explosion. There is evidence tending to show that large quantities of coal dust had been permitted to accumulate in the mine, and that such coal dust, under certain conditions, is highly explosive. The theory of plaintiff is supported by the fact that this explosion was accompanied by a loud noise, which is in accord with the expert testimony that a detonation accompanies a dust explosion, while ignition of powder smoke would cause only a puff. It is

17 P—31

also in proof that if this had been a powder smoke explosion, the flames would not have extended so far as plaintiff had retreated, to wit, four hundred and nine feet. Moreover, there is evidence tending to show that part of this explosion passed down entry eleven, burning the clothes and flesh of one M. L. Duncan, who was fully one thousand two hundred feet away. Plaintiff and his helper, it appears, after the explosion occurred, were covered with coal soot, as evidence of a coal dust explosion. It is further shown that, after the explosion, it was observed that patches of mine dust which had been sprinkled or watered did not burn. Without further reference to the testimony, we find material evidence in the record to support the finding of the jury, or from which they might reasonably have inferred that this was a mine dust explosion, and, under well-settled rules of practice, the verdict of the jury on the facts cannot be disturbed.

The second assignment is, the Court erred in allowing James Sheldon to express his opinion of the competency and skill of the mine boss, James Quintrell, over the objection of defendant company, since he had failed to show a sufficient opportunity for knowledge of said Quintrell to qualify him to speak on that subject, and because, under the law, it was not competent for said witness to express his opinion of the skill and competency of said mine boss.

The only exception by defendant to this testimony

in the Court below was that witness had not shown that he knew anything about Quintrell.

Two other witnesses had been permitted to testify on the subject without showing any particular knowledge of Quintrell, and no objection was interposed by defendant to their testimony, and this evidence was only cumulative.

The sixth assignment is, that the Court erred in permitting plaintiff's counsel to introduce as evidence that part of the report of F. P. Clute, Superintendent of the Bureau of Labor, Statistics, and Mines, to the Governor and Fiftieth General Assembly of the State of Tennessee, for the year 1896, from pages 1 to 16, inclusive, over the objection of the defendant iron company, as follows, to wit: (1) Because said record is not a work of science; (2) it is not a public document; (3) said report is only an *ex parte* statement of the State Mine Inspector, F. P. Clute, and not a deposition taken in regular form, with opportunity for cross-examination.

We understand the only purpose for which this book was admitted was to show that mine dust is explosive, under certain conditions, in the absence of any inflammable gases. This fact was admitted on the witness stand by defendant's superintendent of mines, and was not a controverted question of fact. We find no reversible error in admitting certain portions of this book in evidence, tending to establish a fact which defendant admitted to be true.

The eighth assignment is that the Court erred in

not granting a new trial upon the facts disclosed upon the motion therefor, viz., that, while the jury were deliberating upon their verdict, some of the jurors stated that powder smoke would not explode, and argued that any one who had had experience in blasting and shooting guns knew that to be a fact. Several of the jurors, including the juror referred to, were examined under oath by the Court on this subject, and they denied that any such statement had been made in the presence of the jury. The Court settled this question of fact by overruling the motion for a new trial, and there is ample evidence to support the finding.

The tenth assignment is that the Court erred in defining the degree of care required of a master in furnishing a safe room or entry where the plaintiff should work, and it is insisted that the effect of the charge is to make the mine owner an insurer of the safety of the premises where the servant is to work, and an insurer, also, of the skill and prudence of fellow-servants. Taking the charge as a unit, we do not think it warrants the construction contended for, and is in accord with the general rule that "it is the duty of the master to keep his premises used in the prosecution of his business in a reasonably safe condition, and, if he fails to do so, he is liable to the servant for all injuries resulting to him from such defects." Wood on Master and Servant, Sec. 334, p. 695.

The Court, in charging upon the duty devolved

on defendant company to employ a competent mine boss, was fully warranted by Chapter 170, Acts 1881, entitled "An Act to provide for the ventilation of coal mines and collieries, and for the protection of human life therein."

The eighth clause provides that, "to better secure the ventilation to either coal mines or collieries, to provide for the health and safety of the men employed therein otherwise and in every respect, the owner or agent, as the case may be, in charge of every coal mine and colliery shall employ a competent inside overseer, to be called a mining boss, who shall keep a careful watch over the ventilating apparatus, airways, tramways, pumps, timbering, signaling arrangements, tubes, etc., and all things connected with and appertaining to the safety of the men at work in the mine. He or his assistant shall examine carefully the workings of all mines generating explosive gases every morning before the miners enter the coal mine or colliery, and shall ascertain that the mine is free from all danger."

The charge in this case is not so strong as the positive mandates of the statute. The Court was certainly in error in charging the jury that the duty of inspection imposed by this Act only applied to noxious and explosive gases, and does not make it incumbent on them to remove dust from the mine by reason of inspection. The positive language of the statute is that the mine boss shall keep a careful watch over all things appertaining to the safety

of the mine, and shall every morning examine the mine to see that it is "free from all danger." It is shown that this mine did generate explosiye gases.

The eleventh assignment is that the Court erred in defining the degree of care plaintiff was required to exercise for his own protection. The criticism is that the Court instructed the jury that, notwithstanding plaintiff may be perfectly familiar with all the conditions, such as that the mine is a dry one, that there is dust in it, that there is gas in it, etc., and yet, because he does not understand or discover these things to be dangerous, he may, nevertheless, recover from defendant, etc. The Court had charged that, "if the plaintiff had opportunities afforded him so that he could have seen and known there was danger of the explosion, or if he ought to have seen and known there was danger thereof, . . . . . and, if the plaintiff failed to see the danger and avoid it, he could not recover," etc. Court also charged: "It is the duty of plaintiff to use such care and prudence for his own protection, after place to work is furnished him, as a man of ordinary prudence, situated as he was, would have used under the circumstances." Again, the Court charged that, "if plaintiff knew, or had opportunities to know, of the existence of the dust in the entry, and saw the danger therefrom, and continued in the employment, he could not recover for the injury, nor could he recover if he was skilled or had reason to apprehend danger from an explosion."

In answer to this assignment of error, it is insisted by the learned counsel for defendant in error "that plaintiff would not be barred if he had merely known of the conditions, but neither knew nor ought to have known of the danger therefrom, especially when this danger is established as a scientific conclusion from given facts, and implies a knowledge which might properly be required of the person placed in charge of the safety of a coal mine, and yet not be required of an ordinary miner. In such an employment as this, especially where the statute fixes upon the mine owner the duty of employing a competent mine boss to look after the safety of the men, while the company is held to the exercise of a reasonable care and knowledge on the part of the mine boss, such knowledge is not necessarily required of the employe, who will not be guilty of contribuory negligence unless he has knowledge of the conditions, and ought reasonably to have knowledge of the danger also." The authorities fully sustain the proposition.

Says Mr. Wood, in his work on Master and Servant: "A servant may maintain an action against his employer for injuries sustained by himself, resulting from the negligence of the employer in a matter which, from the nature of the employment, he had a right to rely upon the care and superior knowledge of the employer. It is true that the employe is bound to exercise all reasonable care and prudence, and if an injury result through his want of

care . . . he has no right of action. But in determining what would be negligence on the part of the workman, reference must be had to his limited means of knowledge, to his ignorance of the structures, machinery, and processes upon which he is employed,'' etc.

'' In an action by a servant to recover damages for an injury, occasioned in the course of his employment by defective and unsuitable machinery, it must appear that the machinery was in fact defective; that injury was occasioned by such defect, and that the defendant had notice of it, or would have known of the defect if he had exercised ordinary care.'' Sec. 366, p. 742; Sec. 376, pp. 749, 750.

'' Whether the servant knew of the defects, and ought to have known of the danger, is a question for the jury.'' Wood on Master and Servant, Sec. 377.

'' It may be observed in this connection that it is one thing to be aware of defects in the instrumentalities or plan furnished by the master for the performance of his services, and another thing to know or appreciate the risks resulting, or which may follow, from such defects. The mere fact the servant knows the defects, may not charge him with contributory negligence or the assumption of the risks growing out of them. The question is, did he know, or ought he to have known, in the exercise of ordinary common sense and prudence, that

the risks, and not merely the defects, existed." 14 Am. & Eng. Enc. L., p. 844, note.

These principles are not contravened in · anywise by the case of *Coal Creek Mining Co.* v. *Davis*, 90 Tenn., 715, 716. It was expressly stated in that case that "Davis was an old miner, thoroughly acquainted with this mine, and aware of the character and location of these buildings. With all his experience and knowledge he must be taken to have willingly engaged in the service of this company, and to have taken upon himself the risks incident to these buildings. Being in charge of the ventilation of this mine, he was peculiarly aware of the effect of an intake of smoke resulting from the burning of these buildings. He was necessarily aware that this smoke would only reach him after permeating and filling all the passages and chambers of the mine, and that his escape would then be cut off. This danger, while a slight one, was, in the nature of things, more apparent to him than to any other servant of the company. His Honor properly charged the jury upon the effect of his knowledge."

The other assignments have been examined, but we find in them no reversible error.

The judgment is therefore affirmed.