Railroad v. Jarrett.

TENNESSEE COAL, IRON & RAILROAD CO. *v.* W. C. JARRETT.

(*Knoxville.*     September Term, 1903.)

1. **MASTER AND SERVANT.** Duty of master to instruct inexperienced servant.

The employer is bound to use ordinary care to instruct the inexperienced, unskilled, or ignorant employee, and explicitly to warn him of dangers. (*Post, pp.* 572-578.)

Cases cited and approved: Whitelaw v. Railroad, 16 Lea, 319; Iron Co. v. Pace, 101 Tenn., 476; Brennan v. Gordon, 118 N. Y., 494; Campbell v. Eveleth, 83 Me., 53; Leary v. Railroad, 139 Mass., 584; Felton v. Girardy, 104 Fed. Rep., 127.

2. **SAME.** Same. On transferring servant from a safe work to a dangerous work.

Where an inexperienced employee engaged in ordinary labor requiring no skill is commanded by the employer to go outside of his regular employment which was not attended with special danger, and to assist in the performance of work, which was dangerous, and required skill and experience, and exercise of precautions to avoid danger, the employer was guilty of negligence in failing to instruct the employee, and to warn him of the dangers involved, and is liable in damages for injuries received by such employee in such dangerous work. (*Post, pp.* 572-578.)

Cases cited and approved: Whitelaw v. Railroad, 16 Lea, 319; Iron Co. v. Pace, 101 Tenn., 476; Brennan v. Gordon, 118 N. Y., 494; Campbell v. Eveleth, 83 Me., 53; Leary v. Railroad, 139 Mass., 584; Felton v. Girardy, 104 Fed. Rep., 127.

3. **SAME.** Same. Same. Charge of court that is proper in such case.

In an action by an employee for personal injuries, a charge by the court to the effect that where there are several ways, or

Railroad v. Jarrett.

more than one way, in which to do a particular piece of work,
the owner may determine how the work shall be done, and is not
responsible in damages for injuries resulting to his workmen,
simply because he did not adopt the safest and best way to do
the work, but if the employer adopts a dangerous and hazardous
way of doing the work, when there was a reasonably safe way
known to him, and if the employer knows of the danger, and
the employees do not know of it, it is the duty of the employer
to inform the employees of the danger, and if the work is dan-
gerous, and requires skill in its performance, and unskilled men
are selected to do it, it is the duty of the employer to instruct
the employees as to the work to be done, is proper, and is a cor-
rect exposition of the law.    (*Post, pp.* 578-579.)

4.   **SAME.** Same. Same. Same. Refusal of request covered by
   general charge.

   A request to charge that, if the employee was a mature man of
   ordinary intelligence when he was transferred from one gang
   to another, and the danger of the new work he was directed to
   do was obvious, and by the exercise of reasonable diligence,
   could be seen by him, then he was not entitled to warning or
   instructions, and was bound to exercise his mind to discover
   and avoid danger, and for failure to do so, he was negligent,
   and cannot recover, is substantially covered by the general
   charge to the effect that if the employee knew as much about
   the danger by which he was injured as the employer knew, or
   by the exercise of ordinary diligence could have known it, then
   there was no necessity for any warning, and the employee could
   not recover for want of such warning.    (*Post, pp.* 579-580.)

5.   **SAME.** Same. Same. Same. Same. Refusal of request to
   charge as fellow servant, where question is not involved.

   In an action by an employee for personal injuries, where the
   liability of the employer does not turn on the question whether
   the act causing the injury was the result of the negligence of
   a fellow servant, but depends upon the question whether the
   injured employee was ordered into a different sphere of employ-

Railroad v. Jarrett.

.ment by one having authority to do so, and whether the injured employee was instructed and warned, it was not error for the court to refuse a request for instruction that the boss of the gang and the employee were fellow servants, and that the employer was not liable for injuries resulting to such employee from the negligence of such boss and his fellow servant, where such requested instruction ignored the employer's duty to give warning, advice, and instruction to such employee. *(Post, pp.* 580-582.)

FROM MARION.

Appeal from Circuit Court of Marion County.—M. M. ALLISON, Judge.

W. D. SPEARS and J. BRIGHT, for plaintiff in error.

B. A. NEARD and MURRAY & MURRAY, for defendant in error.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

This is a suit for personal injuries. The trial below resulted in a verdict in favor of the plaintiff for $6,000. The trial judge, being of opinion that the verdict was excessive, suggested a remittitur of $2,500, which was accepted by the plaintiff, and thereupon a judgment was pronounced in his favor for $3,500. The defendant appealed, and has assigned errors.

Railroad v. Jarrett.

The first assignment is that there is no evidence to support the verdict. It is insisted that upon the undisputed facts in the record, plaintiff, as a matter of law, is not entitled to a judgment. The gravamen of the action as laid in the declaration is that the defendant company is engaged in the manufacture of iron, owning and operating an iron plant at South Pittsburg, in Marion county, Tenn., comprising furnaces, stockhouses, railroad tracks, etc., and that the plaintiff was employed in said plant in the capacity of a hand, and was a member of what was known as the "floating gang." The duties of the floating gang were to pick out castings, lift up castings, clean up the place, move the brick, move the iron, and similar duties, requiring no mechanical skill or experience. It is alleged that the plaintiff was changed from this employment to the more hazardous work of replacing columns in the stockhouse, which had become displaced. Plaintiff alleges that the accomplishment of this work, properly and safely, required knowledge, skill, and experience, and especially some familiarity with a mechanical instrument known as a "jack." Plaintiff further alleges that he had no experience whatever in mechanical work, and had never worked with the carpenter's gang until a few days before the injury. On that date, to wit, a few days before the injury, the boss of the floating gang directed the plaintiff to report to P. R. Jones, who was the boss of the carpenter's gang, and go to work with him. It is further alleged that both the boss of the floating gang and the boss of the carpen-

ter's gang well knew that plaintiff was not a mechanic, and had no experience whatever in that kind of work. It is alleged that the defendant company gave the plaintiff no warning advice and instructions as to how this work should be done, and that, on account of the negligence of the company's agent in executing the work, and the plaintiff's ignorance and inexperience as a workman, he sustained the injuries.

A more specific statement of the case is that at the defendant's plant was a stockhouse, over which ran elevated railroad tracks. The tracks were supported by upright columns about twenty feet high. Two of these columns had slipped out of their sockets, and leaned toward each other. On the day of the accident the boss of the carpenter's gang ordered the gang, including the plaintiff, to put said columns back in position. Accordingly, a double scaffold, with two floors, about sixteen feet high, was erected under this elevated railway track. A piece of oak timber eight by eight inches and twelve or thirteen feet long, called an "arrow," was placed horizontally against one of the leaning columns. The space between the two columns was sixteen feet, and the intervening space between the end of the oak timber and the other leaning column was filled with a mechanical jack twenty-five or thirty inches long. A piece of iron was then employed as a lever, and the jackscrew was turned for the purpose of forcing the piece of timber and jack against the columns, and thus press them back in their proper places; but the pressure against the end of the

Railroad v. Jarrett.

timber was so great that it caused the jack and timber to buckle with such force and violence as to knock the plaintiff, Jarrett, off the scaffold, down on the iron ore, inflicting upon him very serious personal injuries.

The plaintiff bases his right to recover upon two grounds: First, that the defendant company, in directing him to co-operate in this hazardous service, failed to give him warning advice and instructions; second, that the mode adopted by the foreman for accomplishing this work was dangerous, and not the usual and customary method. The record shows that Jones, the boss of the carpenter's gang, was present superintending the work of replacing said columns, and directing how it should be done. It is insisted that neither the timber nor the jack were in any way supported or confined to their places, but were left entirely loose. There is proof tending to show that the proper and safe way to do this work required that the jack should be placed on the floor, the piece of timber on the jack, and the other end of the timber against the elevated railroad track, and that by the mechanical pressure or force of the jack, the railroad track should have been lifted, so as to allow the columns to be slipped back into their proper places, and the track then let down again. It is insisted that by this method the pressure on the columns would have been entirely relieved, and the process of adjusting the columns in their proper places comparatively simple. Proof was introduced by the plaintiff tending to establish this theory, and also to show that plaintiff was in-

experienced, and had no instructions from defendant's boss in respect of the proper manner to do the work. It is shown that the plan used for readjusting the columns was adopted by Jones, the boss of the carpenter's gang, and that plaintiff was simply complying with the directions of his superior when the accident happened. It is further shown that the plaintiff had no admonition as to the danger incident to this work, nor advice how to avoid it. The declaration alleges that the method employed for accomplishing the work was a dangerous and unusual method; that said Jones, the boss of the carpenter gang, knew this danger, and that the plaintiff did not know it, but, relying upon the superior knowledge of the foreman, plaintiff undertook to do the work in this way in obedience to orders so given, and by reason of the negligence of defendant in adopting this dangerous method the jack and timber gave way, inflicting the injury.

On behalf of the defendant company it is insisted that the master has the right to exercise his judgment in choosing methods of doing his work, and is not responsible in damages in selecting one less safe or more hazardous than another that might have been adopted. It is further insisted that plaintiff Jarrett was a matured man, and a man of intelligence; that he had had eleven years' experience in working around the furnace; that he was capable of knowing, and did know, all the dangers likely to result from the work. As a matter of law, it was insisted on behalf of defendant company, first,

that this injury resulted from an ordinary peril inci-
dent to the service which the plaintiff assumed when he
entered on the employment; and, second, if any negli-
gence be shown, it was that of a fellow servant, for which
the company is not responsible. The insistence made
on behalf of the company is that the boss of the floating
gang and the boss of the carpenter's gang were fellow
servants of the defendant in error, W. C. Jarrett; that
the injury was caused by the negligence of these fellow
servants; and no liability, therefore, attached to the
master. The court fully and correctly charged the law
on both of these propositions. But the plaintiff below
predicated his right to recover upon the following propo-
sition, viz.:

"Where a master commands a servant to go outside
of his regular employment to do work which is attended
with special danger, and the servant does the work at
the time and in the way directed, the fact that the ser-
vant knew that the work was dangerous does not exoner-
ate the master, or make the servant guilty of contribu-
tory negligence, unless the character of the danger be
so patent and glaring that no prudent man would at-
tempt it. The servant does not assume the risk incident
to the new service, but the implied obligation of the
master is that he indemnifies the servant against the
danger incident thereto. If the servant so transferred
from one service to another is ignorant and inexperi-
enced as to the work to be performed, or the danger in-
cident thereto, the master is liable for the injury that

Railroad v. Jarrett.

may result therefrom, unless he properly instructs and warns the servant with reference thereto." 2 Bailey's Personal Injuries, 3475, 3479-3481, 3483, 3484, and authorities cited.

In Shearman & Redfield on Negligence (5 Ed.), section 219a, it is said, viz.:

"The principles governing the management of minors are, to a large degree, also applicable to the employment of inexperienced, ignorant, feeble, or incompetent servants. A master having notice of any such defect in a servant, no matter what his age may be, he is bound to use ordinary care to instruct the inexperienced, unskilled, or ignorant; avoid putting the feeble to work too heavy for their strength; and generally to refrain from exposing them to risks which they are not fit to encounter. When the master has notice of such ignorance, unskillfulness, or ignorance on the part of the servant as would make the ordinary risks of the business especially perilous to that servant, he must give the servant explicit warning of the danger, and not allow him to undertake work without a full explanation of its perils." *Brennan* v. *Gordon,* 118 N. Y., 494, 23 N. E., 810, 8 L. R. A., 818, 16 Am. St. Rep., 775.

In the last case the court says:

"This action is brought upon the theory that the plaintiff, being inexperienced in the running of an elevator, and that to the knowledge of the defendant, and that having been assigned by the defendant to perform this

duty, the defendant was bound to qualify him for such service."

It appears that in that case the porter in the store had been transferred to the position of operating the elevator.

See, also, *Campbell* v. *Eveleth,* 83 Me., 53, 21 Atl., 784; *Leary* v. *Boston & Albany R. R.,* 139 Mass., 584, 2 N. E., 115, 52 Am. Rep., 733.

This question was considered very fully in an opinion by Judge Lurton in *Felton* v. *Girardy,* 104 Fed., 127, 43 C. C. A., 439. The facts of that case, as stated in the syllabus, are as follows:

"Plaintiff's intestate was employed as a boiler maker's helper in the repair shops of defendant railroad company. During a holiday, when most of the other employees were absent, he was directed by the foreman of the shops to go into the fire box of a locomotive engine, which had steam up, and tighten the plug in a leaking flue of a boiler. The plug was a screw plug, and in attempting to drive it with a hammer he broke the threads, so that the plug was forced out by the pressure, and he was scalded to death by the escaping steam and water. It was shown that two kinds of plugs were used in locomotive flues, one being screwed into the flue and the other driven; but it did not appear that deceased knew such fact, and there is evidence tending to show that the repairing of such plugs was the work of an experienced boiler maker, who could have told which kind the one to be repaired was, and that it should have been tightened

Railroad v. Jarrett.

with a wrench.   There is also testimony that the deceased objected to doing the work while the boiler was hot, saying he did not know how to do it, or what to do, but he was ordered back without instructions." Said Judge Lurton:

"A servant impliedly assumes the risks and hazards incident to the service he contracts to render, and, in the absence of knowledge to the contrary, an employer may assume, as between the master and servant, that one applying for a particular employment possesses the skill and judgment requisite to the safe and proper performance of his duty; but if the employment be one of a dangerous character, requiring skill and caution for its proper discharge with safety to the servant, and the master be aware of the dangers, and have reason to know that the servant is unaware of them, and that, from his youthfulness, feebleness, incapacity, or inexperience, he does not appreciate them, the servant cannot, even with his own consent, be exposed to such dangers unless he be cautioned and instructed sufficiently to enable him to comprehend them, and, with proper care on his part, to do his work safely;" citing many authorities.   "The rule is not materially different in principle when a servant is directed to do a temporary work outside of the work which he has engaged to do.   If there is nothing peculiarly dangerous in the new work, and the master has no reasonable ground for believing that the servant is unaware of the dangers he will encounter, or has not the requisite skill and experience to do the work with safety

to himself, the servant may well be regarded, if he obeys, with having assumed the usual and ordinary risks incident to the employment"—citing authorities. "But when a servant is ordered by one having authority over him to do a temporary work beyond the work which he had engaged to do, and the superior knows, or ought to know from all the circumstances of the case, that the work which the subordinate is directed to do is of a peculiarly dangerous character, and is aware, or under all the circumstances should be aware, that the risks and hazards of the work, or the proper mode of doing the work to avoid the incident risks, are not obvious or known and appreciated by the subordinate, by reason of his youth, incapacity, or inexperience, it is the duty of the superior to caution and instruct such disqualified servant to enable him to understand the dangers he will encounter, and how to do the work with safety, if he exercises due care himself;" citing authorities. "The principle is that, if the employer knows the servant will be exposed to risks and dangers in any labor to which he assigns him, and is aware that the servant is, from any cause, disqualified to know, appreciate, and avoid such dangers—the dangers not being obvious—the master is guilty of a breach of duty unless he gives such reasonable cautions and instructions as should reasonably enable the servant, exercising due care, to do the work with safety to himself." *Whitelaw* v. *Railroad*, 16 Lea, 391, 1 S. W., 37; *Iron Co.* v. *Pace,* 101 Tenn., 476, 48 S. W., 232.

In the present case there is proof tending to show that skill and experience were required in readjusting the displaced columns, and, unless certain precautions were observed, there was danger attending the work. The proof is that, to be safe, the jack must be operated on a plumb line and square, and that it is dangerous to operate it when placed in any other position. This danger was not obvious, and would not be discernible to a common laborer, employed in what was known as a "floating gang." But the foreman of the carpenter's gang was chargeable, as a matter of law, with such knowledge, and it was his duty to acquaint inexperienced employees with the danger, and to give them warning advice and instructions how to avoid it. On this subject the court charged the jury in accordance with the well-established rule as follows, viz.:

"If the proof shows that the plaintiff was an unskilled workman, and that the work of adjusting these upright columns with a jack and piece of timber was dangerous, and required a skilled mechanic to perform, and the defendant company knew of these dangers, that the plaintiff had no experience in this kind of work, that he was ignorant of the dangers, and the proper way in which to do it; and if no notice of these dangers was given to the plaintiff, and no instructions given him as to how to do the work, which, if they had been given him and followed, would have prevented the accident; or if wrong instructions were given by the defendant, or by a super-

111 Tenn—37

ior servant, as to the way in which this particular work should have been done; and if plaintiff was injured while doing said work by reason of the negligence of the defendant in failing to warn him of the danger, or give him proper instructions, or by giving him wrong instructions—then the plaintiff would be entitled to recover."

There can be no exception properly taken to the instructions given by the circuit judge as quoted above.

Again, it is alleged in the declaration that the method adopted by defendant's foreman for readjusting the columns was not the usual, customary and safe way to do the work, but that it was dangerous and extrahazardous; and that defendant knew it was not the usual and customary way, and that it was dangerous and hazardous, but that the plaintiff did not know this fact, and could not have known it by the exercise of ordinary care. On this subject the court charged the jury as follows:

"Where there are several ways in which to do a particular piece of work, or where there is more than one way in which to do it, the owner has a right to say how the work shall be done, and will not be held responsible in damages for injuries resulting to his workmen, simply because he did not adopt the safest and best way to do the work. But if the master adopts a dangerous and hazardous way of doing the work, when there was a reasonably safe way known to him, and if the master knows of the danger, and the servant does not know of it, it is the duty of the master to inform the servant of the danger; and if the work is dangerous, and requires

skill in its performance, and unskilled men are selected to do it, it is the duty of the master to instruct the servant as to the work to be done."

We are of opinion that this instruction contained a correct exposition of the law on this subject.

The fifth assignment is that the court erred in refusing the following request submitted by counsel for the company after the delivery of the general charge, viz.:

"If you find that plaintiff was, at the time of the accident, a full-grown man, of ordinary intelligence, and that he was working with the floating gang, and that he was directed by the boss of the floating gang to go and work with the carpenter's gang, and you further find that the work with the carpenter's gang—especially the work that the plaintiff and others were engaged in at the time of the accident—was open, if the danger was obvious, and could be seen by plaintiff, or if, by the exercise of reasonable diligence, plaintiff could have seen it, then he was not entitled to warning or instructions. The plaintiff is bound to exercise his mind to discover and avoid danger, and, if he fails in this regard, he is negligent, and cannot recover."

We are of opinion that this request was properly refused, since it was substantially given in the general charge as follows:

"If the plaintiff knew as much about the danger of this work as the defendant did, or if he could, by the exercise of ordinary diligence, have known it, then there would be no necessity for any warning, and the plaintiff

would not be entitled to recover on account of the failure of the defendant to warn him of this danger."

The sixth assignment of error is that the court erred in refusing the following instruction submitted by counsel for the defendant company, viz. :

"If you find that Jones, who was at the time of this accident to Jarrett in charge of carpenter's gang, and the foreman, and you further find that he had over him other agents of the company, who were his superiors at that time and place at the furnace, and that there were other bosses and gangs of men, viz., a boss of the floating gang, a boss of the stockhouse gang, a foundry boss and gang, and they were all working at one place—the furnace—and all under the general superintendent of the furnace, and together were engaged to accomplish the one end, viz., the making of iron, then I charge you that Jones, the boss of the carpenter's gang, would be a fellow servant with Jarrett, the man who received the injury, and that the defendant would not be liable for any accident to Jarrett while pressing these posts apart and placing them in position, resulting from the negligence of Jones in adopting a less safe of two methods in ordinary use in pressing these posts apart, or negligently giving orders to the men while executing the method adopted in replacing the posts in their proper positions."

It is insisted in support of this request that Jones was not a vice principal, but worked as a common laborer; that this particular work was done under the

order of Porter Gaines, the superintendent; and that Jones had no power to hire or discharge the men. It is insisted that at most he was only the one designated as a leader to take the lead in doing the work, and was in no sense a vice principal; citing *Alaska Treadwell Gold Min. Co.* v. *Whelan,* 168 U. S., 86, 18 Sup. Ct., 40, 42 L. Ed., 390.

It will be observed that this instruction ignores the fact that plaintiff had been taken from his employment as a member of the floating gang, and ordered to work with the carpenter's gang—a position requiring mechanical skill and experience, and attended also with more danger. In such exigency it is incumbent on the master, as we have seen from the authorities, to give his employee warning advice and instructions, so as to enable him to perform his new duties with safety to himself. In such a case the liability of the master does not turn on the question whether the act causing the injury was the result of the negligence of a fellow servant, but depends on the question whether the injured servant was ordered into a different sphere of employment by one having authority to do so, and whether the injured servant was given warning advice and instructions. It is not denied that Jarrett was ordered to go into the stockhouse, and assist in readjusting the columns. It is claimed on behalf of the company that on the evening before the accident Porter Gaines, superintendent of the works, ordered Jones, the foreman of the carpenter's gang, to go into the stockhouse and put the pillars back

in their places. Jones accordingly selected Jarrett and two other hands to assist him in the work. But the plan of accomplishing the work and its details were left entirely to the discretion of Jones. Mr. Gaines, the superintendent, was not present while the work was progressing, and did not assume any supervision or direction thereof. Hence we are of opinion there was no error in declining the request asked, first, because it ignored the duty of the company to give warning advice and instructions to an inexperienced employee about to enter upon a service outside of his regular employment.

We find no reversible error in the record, and the result is the judgment must be affirmed.