JEFF MOON, Administrator, v. CITY OF CHATTANOOGA.

Eastern Section.   June 15, 1929.

Petition for Certiorari denied by Supreme Court, October 12, 1929.

P. H. Thach and Robt. L. Denman, of Chattanooga, for plaintiff in error.

B. E. Tatum and J. W. Anderson, of Chattanooga, for defendant in error.

OWEN, J.   Jeff Moon, administrator of the estate of Grady Mathis, has appealed from a judgment rendered against him in the circuit court of Hamilton county.   There was a directed verdict at the conclusion of plaintiff's proof, motion for a new trial was

overruled, an appeal perfected. The plaintiff has assigned but one error and that is, that the court erred in directing a verdict against the plaintiff because there was material evidence introduced in the case showing that the plaintiff was entitled to recover.

It appears that this cause was heard by Honorable W. B. Garvin, Chancellor sitting by interchange for Honorable Oscar Yarnell, the regular judge.

Grady Mathis, a bright and intelligent young man, twenty years of age, was employed by the defendant, a municipal corporation, to drive a truck and to work under a foreman or superintendent who had charge of certain street work for the City of Chattanooga. This truck driven by the deceased was hauling chert or gravel from a gravel pit near the City of Chattanooga, which chert or gravel was used to repair certain streets and roadways of the city. It appears that a chert bank, from which chert was removed had been opened upon in the side of a ridge for a distance of 150 feet. In mining and removing the chert the face of the bank had been kept more or less perpendicular and the bank of the pit ranged in height from thirty to fifty feet in the different parts thereof. There were what is known as "benches" or offsets in the face of the bank at different places from ten or twelve feet from the bottom floor to the "bench offset" and in some other places it was fifteen to eighteen feet from the bottom floor to the bottom of the "bench" or offset. The city or defendant had certain employees who loosened the chert and made it ready to be loaded in trucks. These employees loosened the chert and loaded it on the trucks by means of picks and shovels. While the deceased was engaged in hauling this chert, certain parts of it became loosened by the deceased using a pick and it sluffed off and buried him underneath a great mass of chert or rock. The deceased was standing up in the rear of his truck at the time he met with the accident. From the injuries received he died shortly thereafter.

The plaintiff insisted in his declaration that the defendant was guilty of negligence.

(1) Because it neglected and failed to furnish plaintiff's intestate, Mathis, a reasonably safe place to work, the place where he was required to work being dangerous because of the gravel, chert, and earth falling in large quantities without warning.

(2) Because the defendant was engaged in a hazardous work of loading trucks by means of allowing chert to roll from the face of the steep embankment into the truck where its employees were working, and the defendant negligently failed to inspect said premises before said truck was loaded so as to determine whether said work could be done with reasonable safety, inspection being necessary.

(3) Mathis was a young man with practically no experience in the work and defendant failed to instruct and notify him of the dangers incident to said work and negligently ordered him to drive his truck against the gravel pit to be loaded and Mathis, on account of being ignorant, inexperienced and unskilled in said work, did not know and could not have known by the exercise of ordinary care of the dangers of loading the truck in the way and manner in which it was done.

(4) Defendant was negligent in not having a skilled foreman at said gravel pit in charge of said work to direct the men working there and to warn and notify them of the dangers and to supervise the work, inspect and discover dangers and defendant's servant directed Grady Mathis to place his truck against or near the face of the pit, and this was a negligent way of doing the work and was known to the defendant and was not and could not have been known to Grady Mathis by the exercise of ordinary care.

The declaration also alleged that Mathis did not know the dangerous condition of the gravel pit, was not warned and instructed, did not know that the defendant was failing to inspect the gravel pit and did not know that defendant's servants were ignorant, unskilled and unfit and that it had no foreman at said pit to direct the movements of the trucks and direct the men in loading the trucks and that the work was being done in a dangerous and unsafe way.

The undisputed proof establishes the following facts:

On December 1, 1927, which appears to have been a cold day, plaintiff's intestate was injured and killed, C. L. Hardin and C. R. Hardin, two of the city's employees, were engaged at the chert pit digging and loosening the chert and loading it with shovels into a truck driven by the deceased. It was the exclusive duty of the two Hardins to dig and loosen the chert and load it into the truck. It was no part of the duty of the deceased, the truck driver, to either dig or loosen the chert, or to assist in loading it into the truck.

On the date, and immediately before plaintiff's intestate was killed he backed his truck up against the face of the bank of chert and C. R. Hardin proceeded to load the truck with the loosened chert. The truck was backed up against the face of the chert bank in direct violation of the rules and of previous orders that has been given to the deceased. The deceased had asked for and obtained a pick, and stood up in the back end of his truck and began digging in the face of the bank of chert. At this place the chert bank was practically perpendicular to the height of some twelve or fourteen feet above the floor of the chert pit. At a height of twelve or fourteen feet above the bottom there was a bench, or set-off in the face of the chert. When the deceased be-

gan digging in the face of the chert bank he was warned by C. L. Hardin of the danger, and cautioned to be careful lest he dig the chert in such way that it fall upon him and injure him. The deceased failed to heed the warning, and continued to dig in the face of the bank for a moment or so, and loosened a large sheet or section of the chert in the face of the bank some six or eight feet wide extending from near the top of the truck upward to the bench, cr offset, so that it broke loose and fell, knocking the deceased down into the truck and so crushed and injured him that he died within a few hours thereafter. The sheet, or slab of chert that deceased had loosened to such an extent that it fell upon him was four to six feet wide, and eight to ten feet long, and from a feather edge to two feet thick, and contained in it a very large rock, or stone, that probably weighed 1500 pounds. This large rock struck the side of the truck and rolled off on the ground, and a sufficient amount of the chert struck the deceased to knock him down in the bottom of the truck and entirely cover him. The sheet or slab of chert that fell broke off from the top and fell out over the truck as a tree would fall.

It was no part of the duty of the deceased to dig or loosen the chert, or to assist the other employees in loading it into the truck. At the time of his injury the deceased was voluntarily digging the chert for the purpose of exercising himself to get warmed up a little.

It was not unusual for chert to fall from the face of the chert bank in large sheets. Some times as much as a ton at one time would fall. The chert seemed usually to be in layers, or sheets. At places there appeared to be seams, and when the workmen would dig into a layer to any material extent frequently the entire sheet above and below would fall.

The deceased had been in the employment of the city for more than a year prior to his injury. He had worked in the chert pit digging and loosening the chert and loading it into the trucks and wagons for a considerable length of time. During his employment he had been taken from this department for a month or a month and a half, to drive a sprinkler, or water wagon. For some three or four months, however, just prior to his death he had been employed as a truck driver. His duties as such were to drive the truck to the chert bank where the employees there engaged would load it with chert and then deliver the chert to the place where it was needed in making and repairing streets.

The deceased was an unusually bright and intelligent young man, about twenty-one years of age. He knew as well as anyone else knew the dangers incident to digging in the face of the chert bank. He knew that he was directly violating the rules laid down by the foreman, Mr. Sullivan, governing the drivers of the trucks

when he backed his truck up against the face of the chert bank. He had been personally and directly instructed not to do that. He had been instructed not to do that because of the danger to himself and to the truck.

It is shown in the evidence by the plaintiff's witnesses that it did not require experience to observe the danger of the chert falling; that the danger was obvious to a casual observer.

The chert was loosened and removed from the chert bank by the use of picks in the hands of employees who dug down the chert bank. Every stroke of the pick into the face of the bank that loosened chert changed the conditions. There was not anything permanent about the chert pit, except the bottom floor.

Learned counsel for the plaintiff makes the following insistence and cites the following authorities in support thereof:

It is the duty of the master or employer to keep his premises used in the prosecution of his business in a reasonably safe condition and, if he fails to do so, he is liable to the servant for all injuries resulting from such defects. Iron Co. v. Pace, 101 Tenn., 476; Va. Iron Co. v. Hamilton, 107 Tenn., 705; Smith v. Coal & Iron Co., 115 Tenn., 543.

It is the duty of the master to inspect, and if he delegates hi·· duties to an inferior, it is the duty of such inferior to inspect, and if he fails in the duty, the master is liable. Marble Co. v. Black 89 Tenn., 123; R. R. v. Jackson, 106 Tenn., 438; Nashville Ry. Co. v. Elliot, 1 Caldwell, 611; East Tenn. R. Co. v. Gurley, 12 Lea, 46.

The principle is that if the employer knows the servant will be exposed to risk and danger in any labor to which he assigns him and is aware that the servant is, from any cause, disqualified to know, appreciate and avoid such dangers, the dangers not being obvious, the master is guilty of a breach of duty unless he cautions and instructs the servant, as would reasonably enable the servant to exercise due care and do his work in safety to himself. T. C. I. Co. v. Jarret, 111 Tenn., 565; Iron Co. v. Pace, 101 Tenn., 476; Whitelaw v. R. R. Co., 84 Tenn., 391.

. We are of the opinion, however, that the instant case falls within the rule and doctrine announced in the case of Heald v. Wallace, 109 Tenn., 348. In that case a miner was killed while digging an opening into a mine. The opening caved in on the deceased. The Supreme Court in denying liability said:

"The duty of the master does not extend to keeping safe the place of the servant's labor where the place is known to be dangerous, or where the work which the servant is employed to do consists in making a dangerous place safe or in constantly changing the character of the place for safety by the labor performed, as in the entry room of a mine; in such cases

the hazard of the dangerous place and the increased hazard of the place made dangerous by the work are the ordinary and known dangers of the employment, assumed by the servant."

The principle announced in Heald v. Wallace, supra, has been approved by this court and the Supreme Court repeatedly. In Smith v. Coal & Iron Co., 115 Tenn., 554, it was said:

"This court held that the doctrine of safe place to work does not apply to such places as are constantly shifting and being transformed as the direct result of the employees' labor. When he engaged in a work of making a place that is known to be dangerous safe, or in work that necessarily changes the character for safety of the place in which it is performed as the work progresses, the hazard of the dangerous place, and the increased hazard of the place made dangerous by the work, are the ordinary and known dangers."

A master has the right to assume that a servant will perform his duties in the customary way and that he will particularly follow a course for a long time observed by his fellow workmen.

In the instant case the proof clearly shows that the deceased was as well acquainted with the conditions at the chert pit and knew as much about the danger of the chert's falling in as anyone else did. The danger was open to common observation, the deceased was intelligent and under the undisputed facts we are of the opinion that he assumed the risk, the danger was obvious and apparent.

In Brown v. Electric Ry. Co., 101 Tenn., 252, our Supreme Court said:

"Danger from a bank or wall of earth falling is open to common observation, and is a risk that a servant working in its vicinity assumes."

In the case of Railway v. Fox, the Court of Civil Appeals, 7 Hig., page 51, it is said:

"It is a well settled rule of law in this State and all other jurisdictions that we have any knowledge of, that where the servant has knowledge or means of knowledge, of dangerous defects but continues in his employment he assumes the risk." Citing, Smith v. Dayton Coal Co., 115 Tenn., 543; Heald v. Wallace, 109 Tenn., 346; Corbitt v. Smith, 101 Tenn., 368; Brewer v. Tenn. Coal Co., 97 Tenn., 615; Brown v. Electric Rd. Co., 101 Tenn., 252; Ferguson v. Phoenix Cotton Mills, 106 Tenn., 236; Railroad Co. v. Edwards, 111 Tenn., 31.

In the case of Chemical Co. v. Bettis, 5 Hig., 103, the plaintiff's intestate lost his life while engaged in removing earth, while so engaged a quantity of earth fell upon him. The Court of Civil Appeals in that case held that a directed verdict should have been granted. The court further said:

"It is not incumbent upon a Master to warn or instruct an experienced servant as to the ordinary and usual risks of employment, although the employment is fraught with danger."

"A master is not liable in damages to a servant injured by the caving in of banks of earth where the servant knew as much or more about conditions as did the master and had opportunity to protect himself from such conditions."

The court in discussing the case said:

"The dangers were open and obvious and were incident to the business. They were as apparent to the servant as they were to the master. In addition to this, conditions were continually changing as the result of the operations carried on by Bettis (plaintiff) and his associates. It was impossible to keep the mine safe as a stationary place; the likelihood of the earth tumbling down was continually increasing or shifting. Nobody knew this better than Bettis. This was, therefore, an ordnary risk and one incident to the business,—in fact, a hazard which could not have been avoided by the exercise of the utmost care upon the part of the master, to say nothing of ordinary prudence. The inevitable conclusion is, therefore, that Bettis assumed the risk of the tumbling in of the surface as the work progressed and that his representatives cannot sue for injuries received by the happening of this always to be anticipated event."

In the case of Railroad v. Edwards, 111 Tenn., 31, the court said:

"A servant who knows all the dangers of the employment, and is an experienced man, assumes the risks incident to such employment, and cannot recover damages for injuries resulting therefrom."

In the case of Cooper Company v. Simpson, 6 Hig., 536, the court held:

"Where the master sets his servant to work in a place that is constantly changing and where new or recurrent dangers may appear, the master may onerate the servant with the duty of giving the superintendent notice of such danger, or in case of failure to assume himself the risk of the situation. And when in such case the servant elects to assume the hazards instead of notifying his principal and is injured, there can be no recovery."

See also the case of Walton-McDowell Co. v. W. F. Baker, 6 Hig., 253.

"Where plaintiff's intestate had been for a long time engaged with others in removing a bank of earth by repeatedly undermining the same, so as to bring the earth down from above and he must have known as well as anyone the danger attending the work and he was finally killed by the sudden

falling of earth upon him, held that plaintiff had no ground for recovery on account thereof against the defendant.''

Not only did the unfortunate young man assume the risk when he began to use the pick but he voluntarily left his regular work and sought a more dangerous position, evidently had he remained at his steering wheel the chert would not have slided off and onto the truck, but it was his own act that brought the chert and earth upon him and he did this contrary to the instructions he had received and out of the line of his duty. We find no negligence against the defendant and it did not owe the deceased any duty which it failed to perform. The assignment is overruled, judgment of the lower court is affirmed.

Heiskell and Senter, JJ., concur.